MISSOURI, K. & T. RY. CO. OF TEXAS v. BARRINGTON.  (No. 7252.)

(Court of Civil Appeals of Texas. Dallas. Jan. 23, 1915. Rehearing Denied Feb. 20, 1915.)

MASTER AND SERVANT ☞204 — INJURY TO SERVANT — ASSUMPTION OF RISK — SAFETY APPLIANCE ACT.

Under the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1913, § 8605]), as amended in 1896 (Act April 1, 1896, c. 87, 29 Stat. 85 [U. S. Comp. St. 1913, § 8610]) and 1908 (Act May 27, 1908, c. 200, 35 Stat. 324 [U. S. Comp. St. 1913, § 8616]), which makes it the absolute duty of all railways to have all their cars equipped with secure handholds and denies the defense of assumed risk, and, in view of Act April 14, 1910, c. 160, § 2, 36 Stat. 298 (U. S. Comp. St. 1913, § 8618), providing that all cars having ladders shall be equipped with secure handholds, that the defective handhold, by which plaintiff was injured, was on the roof at the top of the car, was unimportant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. ☞ 204.]

Appeal from District Court, Grayson County; W. J. Mathis, Judge.

Action by E. Barrington against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Chas. C. Huff, of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant. J. H. Randell, of Denison, and Randell & Randell, of Sherman, for appellee.

TALBOT, J. This is a personal injury suit. The material facts, and as to which there seems to be no dispute, are as follows: On May 20, 1913, and for some time prior thereto, appellee was in the employ of the appellant as a freight brakeman. While in the discharge of his duties on said date, and at a point between Warner Junction and Ray Yards, stations on appellant's line of railway in Grayson county, Tex., a top or roof handhold on a car in a moving train, which appellee was attempting to use in climbing to the top of the car, came loose and pulled off and caused him to fall to the ground and to be seriously and permanently injured. This occurred at night and was the result of appellant's negligence in failing to have the handhold securely fastened to the car. The defect in this respect consisted in the unsound, rotten, and dangerous condition of the boards and timbers of the car to which the handhold had been fastened by lag screws. This condition of the boards and timbers caused the screws of the handhold, when appellee attempted to use it, to pull out, the handhold released from the car, and appellee precipitated to the ground. The condition of the boards of the car and the insecure condition of the handhold was not the result of any action on the part of appellee, and was unknown to him at the time of the accident. Appellant knew, or by the exercise of ordinary care would have known, of the condition of the boards and insecure fastening of the handhold. The train upon which appellee was at work when injured was engaged in interstate commerce, and the car to which the insecure handhold was attached did not belong to the appellant, but to another railway company, and was what is known as a "foreign car." The charter of appellant, which was introduced in evidence, shows its name to be Missouri, Kansas & Texas Railway Company of Texas, and its purpose to own, maintain, and operate various lines of railway in the state of Texas; one of them being a line from Red River to the city of Denison, and thence through Grayson county to Henrietta, Tex.

The appellee testified that he worked as freight brakeman on the Choctaw Division of the Missouri, Kansas & Texas Railway Company out of Denison from October 24, 1910, up to the time he was injured on the 20th of May, 1913; that at the time he got hurt he was running from Denison to Muskogee, Okl.; that the train upon which he was braking was hauling loaded freight cars from Oklahoma into Texas; that freight trains usually, in coming from the north, run out to Ray Yards, somewhere between three and four miles from the river; that there was no switch, and the trains did not stop anywhere about the bank of Red river on the Texas side; that if there was any inspector at Red River he knew nothing of it; that it was his understanding at the time that the company had inspectors at Ray Yards, and that is where the inspectors did the work of inspecting cars in trains coming into and going out of there; that on May 20, 1913, while the train was coming up from Warner Junction to Ray Yards in Texas, his duty called him to climb on top of a refrigerator car in the train, and, while climbing upon the car, the top or roof handhold pulled loose with him, and he fell backwards to the ground and was thereby injured; that the car from which he fell was gotten at Muskogee; that his best recollection is he was over the car once between Muskogee and McAlester (that is, in looking over the train he walked over to the end; walked over the top of the cars along the running board).

B. M. Burk testified that he is foreman of the car department at Ray Yards, was on the 20th day of May, 1913, and has been about 19 years; that he heard of the circumstances of appellee claiming to be injured on the 20th day of May, 1913, and made an inspection of the car early next

morning; that one of the handholds was missing from the car, and the wood where the handhold was was decayed where the lags had pulled out; that Warner Junction is about three miles from Ray, and it is about three-fourths of a mile from Warner Junction to Red River; that appellant had never maintained or kept a car inspector at Warner Junction or Red River, but had inspectors at Ray where cars coming from the north were inspected.

J. E. Green testified:

That he examined the car in company with General Foreman B. M. Burk on the rip track at Ray Yards. "I found the handhold had been put on with lag screws. * * * If the wood is rotten it has got no hold. * * * The handhold was missing. I could tell it had been fastened on with a lag screw from inspection. * * * With reference to the condition of the wood, it was rotten and decayed. * * * It is my business to understand how to inspect cars. There was nothing to prevent a person on inspection to find out that wood was rotten. I did not see the lag screw nor the handhold. I just saw where they had been."

The defendant answered by a general denial and specially as follows:

(1) "That the car from which plaintiff alleges he fell was a foreign car, hauling interstate traffic (that is, hauling freight from the state of Missouri to the state of Texas); that said car was hauled and transported by the Missouri, Kansas & Texas Railway Company from St. Louis, Mo., to Red River; that said company made careful inspection of the car when it was received and at different places while it was transporting same and found the car to be in proper repair and good condition at every place, except when it reached Mokane, Mo., at which place said defects were found, but same were repaired and all defects repaired that would be discoverable by the exercise of ordinary care in inspecting it, and if any defective condition in said car caused a handhold to pull loose, which caused plaintiff to fall, neither said Missouri, Kansas & Texas Railway Company, nor this defendant, knew of such defects, and that the same were latent and not discoverable by careful inspection."

(2) That appellant "received said car from the Missouri, Kansas & Texas Railway Company at Red River, only two or three miles from its shops and yards in the city of Denison; that it kept and maintained a full force of inspectors at its shops and yards in Denison, which is only a few miles run from where it received said car, and the same would have been thoroughly inspected when it reached said yards and shops; that this defendant had had no opportunity or time to inspect said car after it was received by it before plaintiff claims to have fallen; that this defendant did not maintain and keep inspectors at the place where the car was received from the Missouri, Kansas & Texas Railway Company; that the plaintiff well knew the situation, and well knew that cars coming from the north and received by defendant were not inspected until they reached its yards at Ray and its shops at Denison, and well knew the custom and practice of this defendant of having all cars inspected when they reached its yards and shops, and well knew that said car would not be inspected by this defendant after it was received from the said Missouri, Kansas & Texas Railway Company until it reached its yards in Denison; that defendant was engaged in interstate commerce, and the plaintiff, at the time he claims to have been injured, was engaged as a brakeman in interstate commerce and in the furtherance of interstate commerce, and his cause of action, if any he has, is one arising under and controlled by the acts of Congress of the United States of America and under the facts he assumed the risk of danger incident to operating the car from where it was received by this defendant to its yards before inspection, and if injured, as alleged by him, by a handhold pulling out, such injury resulted from the risk assumed by him, for which this defendant is not liable."

(3) "That the car from which plaintiff claims to have fallen was equipped with grabirons and handholds in the ends and sides of said car, where said grabirons or handholds would be used in the coupling of cars; that same were securely fastened, as required by law, and, if any handhold pulled out and caused plaintiff to fall, it was not a handhold that could be used or was intended to be used in connection with making couplings and uncouplings of cars."

The appellee, by supplemental petition, specially denied the allegations of appellant's answer. The case was tried before the court and a jury; the trial resulting in a verdict and judgment in favor of appellee, from which the appellant has appealed.

Appellant's first assignment of error complains of the court's action in refusing to give its requested instruction directing the jury to return a verdict in its favor. The propositions contended for under this assignment are:

(1) "Appellee being engaged, at the time of his alleged injuries, in interstate commerce, and the alleged defective appliances not being covered by any federal statute enacted for the safety of employés, the common-law rule with respect to assumption of risk applies."

(2) "The custom, practice, and method of appellant being at the time of appellee's alleged injuries, and for a long time prior thereto having been, not to inspect cars received by it from the Missouri, Kansas & Texas Railway Company at Red River until they reached appellant's yards at Ray, and appellee having at the time, and for a long time prior thereto having had, knowledge of these facts, and continuing in the service of appellant with such knowledge, assumed all the risks of danger incident to failure to inspect and of any defective condition of cars operated by appellant between Red River and Ray Yards."

Neither of these propositions should be sustained. The train upon which appellee was at work at the time he received the injuries complained of was engaged in interstate commerce, but we think it quite clear that the alleged defective appliance which caused his injuries was covered by the federal statute, enacted for the safety of employés in 1893, amended in 1896 and 1908, and known as the Safety Appliance Act. The case is not therefore one arising under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, § 8657]), in which the common-law rule with respect to the assumption of risk applies. This being true, there was no issue of assumed risk in the case, and the peremptory instruction was properly refused. The Safety Appliance Act referred to above provides that it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds, and declares that any employé injured on any car in use,

contrary to the provisions of the act, shall be deemed to have assumed the risk, although he had full knowledge thereof. In construing this statute, the Supreme Court of the United States, the Court of Civil Appeals for the Fourth District of Texas, and this court held that it makes it the absolute duty of railway companies to have the cars in use by them equipped with secure handholds, regardless of the question of reasonable care to have and keep them secure, and that, where an injury to an employé happens from an insecure handhold, said statute denied to the employer the defense of assumed risk. Railway Co. v. Kurtz, 147 S. W. 658; Railway Co. v. Plemmons, 171 S. W. 259; Delk v. St. Louis & S. F. Ry. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590; Railway Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582. In the first case cited it is held that railway companies, under said statute, are required to do all things that are possible to have and maintain on the cars in use by them secure handholds, "even if they have for that purpose to keep inspectors on every train they move." Applying these rules in the present case, which we think must be done, it is clear that the court would have erred if it had taken the case from the jury and directed a verdict for the appellant. The fact that the handhold in question was on the top of the car and not on the side or end thereof is unimportant. It was a necessary appliance for the safety of the railway company's employés in performing the duties required of them, and is clearly included in the statute. Furthermore, we find that at the time appellee was hurt he was climbing up to the top of the car on a ladder, and that by act of Congress, passed April 14, 1910, to supplement an act to promote the safety of employés, etc. (U. S. Comp. Stat. 1901, Supp. 1911, § 2, p. 132), it is provided, among other things, that:

"All cars having ladders shall also be equipped with secure handholds or grabirons on their roofs at the top of such ladders."

Nor does the fact that the car in question was a "foreign car" alter the case. The Safety Appliance Acts, as we understand, apply to any car in use by the carrier.

The second and last assignments of error complain of the court's refusal to give a special charge submitting to the jury as an issue of fact to be determined by them the question of assumption of risk. The charge grouped the facts substantially as alleged by appellant in its plea on the subject to which it related, and it contends it was entitled to such a charge. What we have already said disposes of this assignment adversely to appellant's contention. There being no issue of assumed risk in the case, it should not have been submitted to the jury in the form presented by the special charge and in no other form.

The evidence sustains the verdict; and, no reversible error having been pointed out, the judgment of the court below is affirmed.