LUKE J. McNANEY v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

April 28, 1916.

Nos. 19,489—(157)[2].

**Master and servant — unsafe place of work — insecure grab iron.**

1. The evidence examined and *held* to justify a finding by the jury that plaintiff, a brakeman employed by defendant in interstate commerce, was injured because the caboose in the train whereon plaintiff was working was equipped with an insecure grab iron, also that defendant negligently failed to provide plaintiff with a reasonably safe place of work and that such negligence caused or contributed to the injury.

**Federal safety appliance acts.**

2. The Federal safety appliance acts require secure grab irons upon a car or caboose in an interstate commerce train, and if a brakeman

[1] Reported in 157 N. W. 650.          [2] October, 1914, term calendar.

Note.—On the master's duty and liability under Federal and state railway safety appliance acts, see notes in 20 L.R.A.(N.S.) 473; 41 L.R.A.(N.S.) 49,

while using such a grab iron, in the ordinary mode, is injured because
it is insecurely fastened the railway company is liable.

**Pleading — complaint.**

    3. The complaint states a cause of action against defendant as master
for failing to furnish its servants with a reasonably safe place wherein
to work.

Action in the district court for Ramsey county to recover $60,000 for
injury received while in the employ of defendant. The substance of the
pleadings is given in the first paragraph of the opinion. The case was
tried before Olin B. Lewis, J., who when plaintiff rested denied defend-
ant's motion to dismiss the action, and a jury which returned a verdict
for $18,000. From an order denying its motion for judgment notwith-
standing the verdict or for a new trial, defendant appealed. Affirmed.

    *Erward C. Stringer, McNeil V. Seymour and Edward S. Stringer,* for
appellant.

    *Barton & Kay,* for respondent.

HOLT, J.

Plaintiff was in the employ of defendant as brakeman. On July 26,
1913, at New Lenox, Illinois, while in the act of boarding a caboose, he
fell and was injured. The complaint alleged that at the time of the
injury defendant was a railroad corporation engaged in interstate com-
merce and the train upon which plaintiff was working was carrying inter-
state commerce upon an interstate highway; that the caboose in said
train had a defective and loose grab iron which gave way when plaintiff
took hold of it to board the train, and that the defendant had negligently
constructed its track with a drain box so exposed at the place where plain-
tiff attempted to get on, that his foot caught therein and this, together
with the defective grab iron, caused his injury. The injury and em-
ployment of plaintiff were admitted, the allegations of negligence were
denied, and, affirmatively, the defenses of assumption of risk and heed-
less negligence on plaintiff's part were alleged. The jury rendered a
verdict for $18,000 in plaintiff's favor, and defendant appeals from the
order denying a new trial.

Plaintiff was what is termed "swing" brakeman, or the third brake-
man on a through freight train on defendant's road. About five o'clock

in the afternoon, of the day stated, the train stopped at New Lenox to pick up a car of stock, and it became necessary to do some uncoupling, switching and recoupling. When the train had been coupled up and was pulling out plaintiff noticed a switch imperfectly closed. He closed it. By that time the train had obtained some headway, its speed being about six miles per hour. The conductor and the other two brakemen were already on board. Plaintiff approached the caboose, ran three or four steps alongside to get the proper swing for boarding, grasped the grab iron or handhold at the rear end and raised his left foot for the step. At this moment, he claims that his right foot caught in something on the roadbed with sufficient firmness to strain his hold on the grab iron so that it gave way, throwing him under the trucks of the car behind the caboose, which ran over his left arm and leg. The rear brakeman, whose employment defendant terminated soon after the accident, testified positively that the grab iron came loose, the screw holding it pulling out because the post was decayed and splintered; that, while the others were occupied with caring for plaintiff, he took a rock and pounded in the screw that had come loose; that, when the accident happened, he sat with his head outside the caboose window looking directly at plaintiff, and that plaintiff's right foot caught in the end of the drain box mentioned. The defendant's evidence shows that the drain box opening was 5½ feet from the rail; hence it claims that, although plaintiff was tall and could reach far, it was physically impossible for him to catch his foot in the box opening coincident with grasping the grab iron. Further, that the blood on the ground indicated that plaintiff was injured 15 to 20 feet west of the drain box, and, since the train was going east, this shows conclusively that the drain box did not contribute to the accident. It is also insisted that the inspection made of the caboose that night after it arrived at destination, and again the next morning, shows clearly that the rear brakeman's testimony of the grab iron pulling loose was false. We have examined the record very carefully and conclude that these matters were for the jury to solve. The physical facts as to the overhang of the caboose and the outward extension of the grab iron are not established to a certainty, and we are not prepared to say that it is demonstrably impossible for plaintiff to have been caught with the foot in the drain box while grasping the handhold on the caboose. Nor

were the jury required to take the version of defendant's witnesses as to the location of the blood, or as to the solidity of the fastenings of the handhold on the caboose as against that of plaintiff and the rear brakeman. That the caboose was old and out of repair was practically undisputed. The witnesses directed by defendant to examine the same after the accident were not instructed to examine any particular part for defects. We do not think this to be a case where reasonable minds are in accord on the proposition that the grab iron was not defective, or that there was not negligence in the maintenance of the drain box or that the accident did not occur in the manner claimed by plaintiff. Therefore Messenger v. St. Paul City Ry. Co. 77 Minn. 34, 79 N. W. 583; Peterson v. Chicago G. W. Ry. Co. 106 Minn. 245, 118 N. W. 1016, 75 N. W. 583, do not furnish a guide by which to dispose of this appeal.

The court submitted two theories of recovery to the jury, viz: If the caboose was found to be equipped with an insecure or defective grab iron which gave way and caused plaintiff's fall, there should be a recovery and it could not be defeated by a claim that he had assumed the risk of injury therefrom, nor could the amount be reduced by proof of contributory negligence; also, he would be entitled to recover if defendant was found negligent in respect to the roadbed alone, in which case, however, assumption of risk would be a complete defense, if found true, and contributory negligence, if proven, would reduce the amount of recovery as provided in the Federal Employer's Liability Act.

The main ground upon which defendant predicates the right to a new trial is, (a) that the insecure grab iron which is claimed to have occasioned the fall is not one of the safety devices demanded by the Federal Safety Appliance Act, either as originally passed or as amended and supplemented, and (b) that plaintiff, when injured, was not engaged in coupling, in the doing of which work, and that alone, the act assured to him the use of safe grab irons. If either contention be right a new trial is inevitable, for it is not possible to say that the jury based the verdict entirely upon negligence in placing the drain box so that the roadbed was not a reasonably safe place for brakemen while engaged in their work, and that that was the sole proximate cause of the accident.

The evidence does not disclose the manner in which the grab irons and handholds in the ends and sides of cars are made use of so as to give great-

er security to the men coupling cars. That is, it does not tend to show that the use is confined to having hold thereof while walking along the car to couple or uncouple, or that they are not also properly used in getting on to the car to be coupled or uncoupled, or boarding the train or in holding onto while riding upon the car and working the coupling lever. If a person is protected in the use of the grab iron only while, in operating a coupling lever, he has hold of it, the grab iron on the side of the end of a caboose is hardly one required by the act of 1893, for, judging from the photographs in evidence, a person could not very well reach and work the coupling lever while holding on to this grab iron. But it is of assistance in reaching the steps of a moving caboose and from there the lever may be pulled.

The Safety Appliance Act of 1893 requires "secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." The main purpose of that act was to require the use of such couplers that it would be unnecessary for the men to subject themselves to the very great danger attendant upon going between cars. Doubt may therefore arise whether the quoted provision is of any avail to a brakeman, unless injured while in the very act of throwing a coupling pin or lever. However, the act of 1893 has been supplemented by that of 1910[2] which provides that, after July 1, 1911, "all cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure handholds or grab irons on their roofs at the tops of such ladders." Taking the safety appliance acts as now in force, and giving them a construction which will secure to men in the extremely perilous work of brakemen and switchmen the protection intended, we think it should be held that every handhold, step, ladder and running board designed for their support in the necessary work of operating trains, must be secure. That being the case, we deem the grab iron here involved covered by the acts mentioned. The cases of Coleman v. Illinois Central Ry. Co. supra, page 22, 155 N. W. 763; Missouri, K. & T. Ry. Co. v. Barrington (Tex. Civ. App.), 173 S. W. 595; and Texas & Pac. Ry. Co. v. Rigsby, 222 Fed. 221, 138 C. C. A. 51 (affirmed by the Federal Supreme Court, April 17, 1916, 240 U. S. —,

1[27 St. 531, c. 196, § 4]
2[36 St. 298]

38 Sup. Ct.—, 60 L. ed.—. lend support to this conclusion. The testimony shows clearly that, in doing the necessary coupling attending the movement of freight trains, the brakemen have frequent occasion to descend from and bord the caboose attached thereto, and in so doing they make use of the grab iron in question. In the absence of a contrary ruling by the Supreme Court of the United States, construing the safety appliance acts with reference to the proposition here involved, we think it should be held that if the grab iron was insecure, and such insecurity was the proximate cause, or one of the proximate causes, of plaintiff's serious injury, defendant is liable.

There is no merit to the contention that the complaint is not sufficient to predicate recovery upon negligence in not keeping the roadbed in a reasonably safe condition for its employees along which to work.

Apparently the verdict was concurred in by the 12 jurors. Such being the case, we fail to see how defendant can raise the question of the constitutionality of the five-sixths jury law. However that matter is at rest in this court. Winters v. Minneapolis & St. L. R. Co. 126 Minn. 260, 148 N. W. 106.

The order is affirmed. _____