## DIRECTOR GENERAL OF RAILROADS v. RONALD.

(Circuit Court of Appeals, Second Circuit. March 19, 1920.)

No. 128.

1. **Master and servant ☞111(1)—Injury to employé from defective grabiron required by federal act held actionable.**

Under Safety Appliance Act March 2, 1893, § 4 (Comp. St. § 8608), requiring railroad companies to equip their cars with secure grabirons "for greater security to men in coupling and uncoupling cars," it is not necessary that an employé, to be entitled to recover for an injury resulting from a defective grabiron, should have been coupling or uncoupling cars when so injured.

2. **Commerce ☞27(5)—Foreman of wrecking train held engaged in "interstate commerce."**

Foreman of a wrecking train crew employed in connection with interstate commerce, who was required before leaving his train at night to prepare it for immediate service, held to remain in the interstate employment, within Employers' Liability Act April 22, 1908 (Comp. St. §§ 8657–8665), until his day's work was finished by completing such preparation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

3. **Master and servant ☞111(1)—Violation of Safety Appliance Act establishes negligence under Employers' Liability Act.**

Federal Employers' Liability Act April 22, 1908 (Comp. St. §§ 8657–8665), exclusively regulating the relations of common carriers and their employés while engaged in interstate commerce, was enacted long after Safety Appliance Act, and the absolute duty to employés imposed by the latter act must be considered as incorporated in it, and whenever a violation of such duty is the proximate cause of an injury, the negligence of the railroad company is ipso facto established.

In Error to the District Court of the United States for the Western District of New York.

Action by Sidney C. Ronald against the Director General of Railroads. Judgment for plaintiff, and defendant brings error. Affirmed.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (Thomas R. Wheeler, of Buffalo, N. Y., of counsel), for plaintiff in error.

Hamilton Ward, of Buffalo, N. Y. (Dana L. Spring, of Buffalo, N. Y., of counsel), for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is an action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) to recover damages for personal injuries. The plaintiff was assistant tool train foreman

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on the Lehigh Valley Railroad, operated by the defendant, Director General of Railroads. June 11, 1918, he went in charge of a wrecking train from Buffalo to the Suspension Bridge in the state of New York to adjust a shipment of poles on nine cars bound from Toledo, Ohio, to Midway, Conn. He arrived at 10:20 a. m., finished work at 5:20 p. m., and returned to headquarters at Tifft Farm Junction, East Buffalo, about 7:20 p. m. There his train had to be turned around, so as to head eastward, in accordance with the company's practice. In doing this it was necessary to stop at a point where the tank of the derrick car could be filled with water by means of a hose from a water plug, so as to be ready for immediate service. Until this was done the day's work was not finished. The plaintiff was in the act of dropping from the platform of the caboose car as the train approached this water plug; his right hand holding onto a vertical grabiron on the side of the car, when his weight pulled out the lower end, and he was thrown down on his face and severely injured. The ends of the grabiron were screwed to the wooden side of the car by ordinary screw bolts.

Both parties moved for a direction, and Judge Hazel directed a verdict for the plaintiff, leaving to the jury the question of the amount of damages. Section 4 of the Safety Appliance Act of March 2, 1893 (27 Stat. 531 [Comp. St. § 8608]), provides as follows:

"Sec. 4. That from and after the first day of July, eighteen hundred and ninety-five, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car *for greater security to men in coupling and uncoupling cars.*"

Section 8 (section 8612) provided:

"That any employé of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge."

Section 3 of the Act of April 14, 1910, 36 Stat. 298 (Comp. St. § 8619), being a supplement to the Safety Appliance Act, authorizes the Interstate Commerce Commission to designate the number, dimensions, location, and manner of application of the appliances provided for in the act. The Interstate Commerce Commission has by order dated March 13, 1911, provided that for caboose cars with platforms grabirons shall be applied "with not less than one-half inch bolts with nuts outside (when possible) and riveted over, or with not less than one-half inch rivets."

The Safety Appliance Act makes it the absolute duty of the railroad companies to conform to the requirements of the act. Louisville & Nashville R. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931. It is admitted that the grabiron in question did not conform to the regulation of the Interstate Commerce Commission, in that the bolts did not have a rivet head at the inner and a nut at the outer end.

[1] The first objection of the defendant is that the grabiron in question was not one within section 4 of the Safety Appliance Act, "in the ends and sides of each car for greater security to men in coupling and uncoupling cars," and therefore that the Interstate Commerce Commission had no authority to regulate it. But it is not necessary that the employé should be injured while coupling or uncoupling. If the grabiron could be used in getting to the point where the cars were to be coupled or uncoupled, it would be within the section. This is admittedly a liberal construction which was adopted in McNaney v. C. R. & I. R. R. Co., 132 Minn. 391, 157 N. W. 650, and we are willing to follow it.

[2] The defendant next objects that the plaintiff was not engaged in interstate commerce, and therefore not entitled to recover under the federal Employers' Liability Act. The majority of the court are of the opinion that he was so engaged. Although he finished his work at the Suspension Bridge at 5:20 p. m., he did not finish his trip or prepare his train for immediate service before he was injured. Until he had done this his day's work was not finished, and we agree with the trial judge that his interstate employment had not ended. Erie R. R. Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662.

[3] The federal Employers' Liability Act, exclusively regulating the relation of common carriers and their employés while engaged in interstate commerce, was enacted long after the Safety Appliance Act, viz. April 22, 1908 (35 Stat. 65), and this absolute duty of the railroad company under the Safety Appliance Act to its employés, injured when engaged in interstate commerce, must be considered as incorporated in it. Whenever a violation of that act is the proximate cause of the injury, the negligence of the railroad company is ipso facto established. The exemptions in favor of such employés are greater in the Employers' Liability Act than that conferred by section 8 of the Safety Appliance Act; sections 3 and 4 (Comp. St. §§ 8607, 8608) providing that no such employés shall be held to have been guilty of contributory negligence, or to have assumed the risks of the employment in any case, where the violation by the common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.

Were this otherwise, both parties having asked for the direction of a verdict, the direction of a verdict for the plaintiff by the trial judge establishes the fact that the defendant was negligent. Sampliner v. Motion Pictures Co., 255 Fed. 242, 168 C. C. A. 202.

We discover no error in the record, and the judgment is affirmed.

MANTON, Circuit Judge (concurring). The plaintiff below recovered a judgment as the result of a directed verdict of the District Court after both sides had submitted their proof and each requested the direction of a verdict. The motion for a direction was as follows:

"Mr. Spring: If your honor please, I move for a direction of a verdict in favor of the plaintiff upon the ground that, upon the disputed proof, except

as to the matter of damages, it was a violation of the Safety Appliance Act, in that the witnesses all agreed that this grab handle was not fastened to the car with a bolt which had a rivet head on one end and a nut on the other, which is a plain violation of the act, and of course upon the ground, aside from the order of the Interstate Commerce Commission, that it was not securely fastened. Now, under the authorities which I have given to your honor, the question of the assumption of risk, if it is in violation of the Safety Appliance Act, and the question of contributory negligence, are limited, so that there is no question here whatever excepting the question of damages. Now, there are a number of cases where the parties do not join in a motion for a direction of a verdict, as they do here, where the motion has been made with the defendant opposing it, where the courts have granted the motion of the plaintiff for violation of the Safety Appliance Act."

An exception was taken to this ruling. Liability was then imposed for a violation of Safety Appliance Act March 2, 1893, c. 196, § 4, 27 Stat. 531. If the Safety Appliance Act does not apply, then the verdict was directed on an erroneous theory.

The question of damages alone was submitted to the jury; the court taking this latter course of its own motion. In the complaint filed the plaintiff below averred that on the day of his accident he was engaged in adjusting carloads of poles which were en route in interstate commerce, and that in so doing he used the wrecking train and appliances of the defendant below, and that while he was alighting from said wrecking train in the course of his duty he grasped one of the grabirons or handholds of one of the cars of the train for aid in alighting therefrom, and that the handhold gave way, causing him to fall and receive the injuries for which he has recovered damages. It is averred that the handhold was not constructed in accordance with the requirements of the Safety Appliance Act, or in accordance with the orders of the Interstate Commerce Commission given pursuant to the act. Section 4 (section 8608, U. S. Compiled Statutes); section 3 (section 8619, U. S. Compiled Statutes). The answer put in issue the allegations of negligence, the right of recovery under the Safety Appliance Act, and affirmatively alleged that the sole remedy of the plaintiff below is under the Workmen's Compensation Law of New York state. Chapter 41, Laws 1914, constituting chapter 67, Consolidated Laws.

The wrecking train, of which the plaintiff below was an assistant foreman, proceeded from Buffalo to Suspension Bridge, N. Y., and there concededly was engaged in interstate commerce in the adjustment of poles upon the cars. These poles were so long as to require three cars for their carriage. After the readjustment of the poles upon the cars, the derrick car and the wrecking train proceeded back to the Buffalo yards. When this wrecking train arrived in Buffalo, it was turned around, so as to be ready to be taken out at the next emergency call. In doing this, the plaintiff below was riding on the locomotive, but later he boarded one of the box cars of the train, so as to ride up to the place where the train would be laid up. There the derrick car was to be placed over a water pipe in order to refill it with water, so that it would be ready for its next call. However, before the train reached the water plug, plaintiff below intended to drop off from the box car near this water plug, and, while holding on the

handhold in question, he was thrown to the ground by reason of a lag screw pulling out. The plaintiff below was still engaged in his day's service, and a question is presented was he still engaged in interstate commerce at the time of this mishap?

The evidence is ample to indicate that the handhold was not securely fastened and that the requirements of the Interstate Commerce Commission had not been met in its construction and maintenance. Both litigants having requested a directed verdict at the end of the proof, the controverted facts as presented by the proof must be deemed to have been resolved in favor of the plaintiff below. Sampliner v. Motion Picture Co., 255 Fed. 242, 168 C. C. A. 202. The court submitted the question of damages to the jury, and in so doing, although it was not necessary for the purpose of the jury's function, stated that the plaintiff below was engaged in interstate commerce and that he was entitled to recover by reason of the failure of the defendant below to comply with the requirements of the Safety Appliance Act. During the progress of the trial the court submitted in evidence an order of the Interstate Commerce Commission dated March 13, 1911. This order gave specifications as to the size, construction, and method of fastening the handholds. It required that the handholds be securely fastened with not less than half-inch bolts, with nuts outside when possible, and riveted over and with not less than half-inch rivets. It further provided that the handholds should be used upon caboose cars. The Safety Appliance Act with reference to handholds provides (chapter 196, § 4, Act March 2, 1893; section 8608, U. S. Compiled Statutes):

"From and after the first day of July, eighteen hundred and ninety-five, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

This was amended by Act April 14, 1910, which provides as follows (chapter 160, § 3; section 8619, U. S. Compiled Statutes):

"Within six months from the passage of this act the Interstate Commerce Commission, after hearing, shall designate the number, dimensions, location, and manner of application of the appliances provided for by section 2 of this act (Automatic Couplers), and section 4 of the act of March 2, 1893 (Grabirons Act, above quoted) and shall give notice * * * to all common carriers, * * * and thereafter said number, location, dimensions, and manner of application, as designated by said commission, shall remain as the standard of equipment to be used on all cars; subject to the provisions of this act * * * and failure to comply with any such requirement of the Interstate Commerce Commission shall be subject to a like penalty as failure to comply with any requirement of this act."

Section 4 of the same act (Comp. St. § 8621), provides a penalty for violation of the act. This makes clear an intent by Congress to further protect employés by the provisions that liability shall attach even in handling a car out of repair. It provides:

"Hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employé caused to such employé by reason of or in connection with the movement or hauling of

such car with equipment which is defective or insecure, or which is not maintained in accordance with the requirements of this act, and the other acts herein referred to."

Section 6 of the act (section 8623) makes it the duty of the Interstate Commerce Commission to enforce its provisions, and reads as follows:

"All powers hereto granted to said commission are hereby extended to it for the purpose of the enforcement of this Act."

Act April 14, 1910, § 2 (section 8618, U. S. Compiled Statutes), provides:

"It shall be unlawful for any common carrier subject to the provisions of this act to haul, or permit to be hauled or used on its line, any car, subject to the provisions of this act not equipped with appliances provided for in this act, to wit: * * * All cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure handholds or grabirons on their roofs at the tops of such ladders."

Act March 2, 1893, § 8 (U. S. Comp. Stat. § 8612), relieves the injured employé from the assumption of risk where injury is occasioned by failure to comply with this act.

The defendant below argues that the Safety Appliance Act has no application to the case at bar for the reason that the plaintiff below was not engaged in coupling or uncoupling cars when he was injured. It maintains that the Interstate Commerce Commission was powerless to grant orders with reference to handholds or grabirons, so as to fasten liability, except where the same were to be used by men in coupling or uncoupling cars. The clear intent of Congress to permit the Interstate Commerce Commission to make orders with reference to grabirons or handholds, and require that they be securely fastened, is evidenced by the first act and the several supplements thereto as quoted above. It would be a strange construction to say that Congress intended that valid orders of the commission would be dependent entirely upon the future use of the grabirons by the particular employé at the time when misfortune overcame him. No commission or body could anticipate when or under what circumstances grabirons or handholds would be used for coupling or uncoupling. The necessity of stepping upon or alighting from cars by railroad employés makes certain the need of having grabirons or handholds securely fastened.

The legislation was clearly for the safety of employés. Coupling and uncoupling cars is, indeed, but one of the many acts that require the boarding and alighting from cars, and in light of the automatic coupling requirements statute, the need to board and alight from cars solely for the purpose of coupling or uncoupling cars is greatly diminished. The Supreme Court has placed no such construction upon these statutes when it has had occasion in the past to refer to them.

In Louisville & Nashville R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931, the court held that the purpose of the Safety Appliance Act was to promote the safety of employés and ruled that it was unlawful for any carrier engaged in interstate commerce to

use on its railroad cars not so equipped. Southern R. Co. v. U. S., 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72. The court there said:

"The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employés for failure to comply with the law springs from its being made unlawful to use cars not equipped as required—not from the position the employé may be in or the work which he may be doing at the moment when he is injured. This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employés in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty."

This positive duty upon the carrier to comply with the statute was recently announced and held to apply where an employé was not engaged in coupling or uncoupling cars, and where it appeared that he was injured because of the failure of an automatic coupler to perform its function. S. R. R. Co. v. Railroad Commission, 236 U. S. 439, 35 Sup. Ct. 304, 59 L. Ed. 661.

In McNaney v. C. R. & I. R. Co., 132 Minn. 391, 157 N. W. 650, the grabiron gave way on a caboose while the plaintiff was boarding the train after having turned a switch. The highest court of Minnesota held that, to make applicable these provisions of the Safety Appliance Act, and to fasten civil liability for the failure to comply with the Interstate Commerce Commission order, it was not necessary to show that the injured employé was actually engaged in coupling or uncoupling cars when so injured.

In construing the statute, it is essential that we obtain as far as possible the legislative intent. In so doing, we must gather such intent from the title, text, and context. Here we must apply common knowledge of danger in alighting from or boarding cars, which we must assume Congress had in mind, and that such danger existed in infinitely more cases than the mere alighting or boarding of cars for the purpose of coupling or uncoupling them.

It is argued by the defendant below that, if the plaintiff below was not engaged in interstate commerce, he cannot maintain an action to recover under the Safety Appliance Act, but must resort to the remedy of compensation under the New York state Compensation Law. The New York state Workmen's Compensation Act (section 114) provides that it shall apply to employers and employés engaged in intrastate commerce and also in interstate or foreign commerce for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that such employer and employé working only in New York state may, subject to the approval and in the manner provided by the commission, and so far as not forbidden by any act of Congress, accept and become bound by the provisions of the law in like manner and with the same effect in all respects as provided in the act for other employers and their employés. If the Safety Appliance Act creates and fixes the liability, the Workmen's Compensation Act of New York state has no application. To allow the state

act to intervene would destroy the uniformity of the acts throughout the United States and would result in weakening the force and effect of the acts of the several states. Otherwise, a railroad employing labor would be held to pay no more for a violation of the Safety Appliance Act than for the negligence of a coservant, for which compensation may be fixed under the state compensation laws.

In Southern Ry. Co. v. U. S., 222 U. S. 20, 32 Sup. Ct. 4, 56 L. Ed. 72, the Supreme Court recognized the principle that the Congress had no power to regulate intrastate commerce as such, but—

"its power to regulate interstate commerce is plenary and competently may be exerted to secure the safety of the persons and property transported therein and of those who are employed in such transportation, no matter what may be the source of the dangers which threaten it."

After pointing out that the movement and safety of intrastate and interstate commerce are interdependent, and therefore not independent, the court said:

"And so the absence of appropriate safety appliances from any part of any train is a menace, not only to that train, but to others."

Justice Clarke, in Louisville & Nashville R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931, stated:

"The declared purpose of the Safety Appliance Act of 1893 (27 Stat. 531, c. 196), and of the amendatory acts of 1903 and of 1910, is 'to promote the safety of employés * * * upon railroads, by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers * * * and for other purposes.'"

And further:

"While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employés who were obliged to go between cars to couple and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employés only when so engaged."

The Circuit Court of Appeals for the Seventh Circuit recently had this question presented and held in Ross v. Schooley, 257 Fed. 290, 168 C. C. A. 374, that so far as liability in a private suit for an employé's death or injury is concerned, the Safety Appliance Act is applicable and creates a liability for damages. It was there held that, where an employé was not engaged in interstate commerce, he might recover by reason of the provisions of the federal Safety Appliance Act for a violation of its provisions, and that he was not barred by the Workmen's Compensation Law of Illinois (Laws 1913, p. 335). The court said:

"It is immaterial whether the injured employé was at the moment engaged in interstate or intrastate commerce, because the congressional power that was called into play was the power to prescribe the equipment of interstate carriers for the protection of all persons upon such roads, both employés and travelers, regardless of their participation in interstate commerce. A state Legislature, therefore, has no more power to curtail the federal right of an employé than of a traveler. * * * But our conclusion, which rejects a result that would make the operativeness of the act dependent upon the legislative wills of the several states, and which aligns that act with the Employers' Liability Act in substantive and procedural effect, is supported by our under-

standing of Schlemmer v. Buffalo, etc., Ry. Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681 (citing cases)."

In the Ross Case, an application for a writ of certiorari was denied by the Supreme Court. 249 U. S. 615, 39 Sup. Ct. 390, 63 L. Ed. 803.

It is beyond the power of any state to interfere with the operation of a federal act such as putting carriers and their employés to an election between its provisions and those of the New Jersey Compensation Acts (P. L. 1911, p. 134, as amended by P. L. 1913, p. 309) or imputing an election to them through a statutory presumption. The federal act is intended to operate uniformly in all the states as respects its application, rights and remedies conferred, and is therefore paramount and exclusive. Erie R. Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662. A like result was reached in Devine v. Buffalo R. & P. Ry. Co., 253 Fed. 948, 165 C. C. A. 390 (Third Circuit), and Ewing v. Coal & Coke Ry. Co., 82 W. Va. 427, 96 S. E. 73, certiorari denied 247 U. S. 521, 38 Sup. Ct. 583, 62 L. Ed. 1246.

The Supreme Court in Texas & Pacific Ry. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874, considered the application of the Safety Appliance Act where an employé was engaged in intrastate commerce and where he placed his reliance with success on that act. Justice Pitney, writing for the court, said:

"It is earnestly insisted that Rigsby was not under the protection of the Safety Appliance Acts because at the time he was injured he was not engaged in interstate commerce. * * * In Southern Ry. v. U. S. (222 U. S. 20 [32 Sup. Ct. 2, 56 L. Ed. 72]), which was an action to recover penalties for violation of the acts with respect to cars some of which were moved in intrastate traffic and not in connection with any car or cars used in interstate commerce, but upon a railroad which was a part of a through highway for interstate traffic, it was held that the 1903 amendment enlarged the scope of the original act so as to embrace all cars used on any railway that is a highway of interstate commerce, whether the particular cars are at the time employed in such commerce or not. The question whether the legislation as thus construed was within the power of Congress under the commerce clause, was answered in the affirmative, the court saying (222 U. S. 27, 32 Sup. Ct. 4, 56 L. Ed. 72) : Speaking only of railroads which are highways of both interstate and intrastate commerce, these things are of common knowledge : Both classes of traffic are at times carried in the same car, and when this is not the case the cars in which they are carried are frequently commingled in the same train, and in the switching and other movements at terminals. * * * That the scope of the legislation is broad enough to include all employés thus injured, irrespective of the character of the commerce in which they are engaged, is plain. * * * But we are unwilling to place the decision upon so narrow a ground, because we are convinced that there is no constitutional obstacle in the way of giving to the act in its remedial aspect as broad an application as was accorded to its penal provisions in Southern Railway v. United States, supra. * * *

"In the exercise of its plenary power to regulate commerce between the states, Congress had deemed it proper, for the protection of employés and travelers, to require certain safety appliances to be installed upon railroad cars used upon a highway of interstate commerce, irrespective of the use made of any particular car at any particular time. Congress having entered this field of regulation, it follows from the paramount character of its authority that state regulation of the subject-matter is excluded. Southern Ry. v. R. R. Comm., Indiana, 236 U. S. 439 [35 Sup. Ct. 304, 59 L. Ed. 661]. Without the

express leave of Congress, it is not possible, while the federal legislation stands, for the states to make or enforce inconsistent laws giving redress for injuries to workmen or travelers occasioned by the absence or insecurity of such safety devices, any more than laws prescribing the character of the appliances that shall be maintained, or imposing penalties for failure to maintain them; for the consequences that shall follow a breach of the law are vital and integral to its effect as a regulation of conduct, liability to private suit is or may be as potent a deterrent as liability to public prosecution, and in this respect there is no distinction dependent upon whether the suitor was injured while employed or traveling in one kind of commerce rather than the other. Hence, while it may be conceded, for the purposes of the argument, that the mere question of compensation to persons injured in intrastate commerce is of no concern to Congress, it must be held that the liability of interstate carriers to pay such compensation because of their disregard of regulations established primarily for safeguarding commerce between the states, is a matter within the control of Congress; for unless persons injured in intrastate commerce are to be excluded from the benefit of a remedial action that is provided for persons similarly injured in interstate commerce—a discrimination certainly not required by anything in the Constitution—remedial actions in behalf of intrastate employés and travelers must either be governed by the acts of Congress or else be left subject to regulation by the several states, with probable differences in the law material to its effect as regulatory of the conduct of the carrier." 241 U. S. pp. 41, 42, 36 Sup. Ct. 483, 60 L. Ed. 874.

Bound as we are by the pronouncement there and the reasons therefor, as expressed by the Supreme Court, and more recently adhered to by the denial of the writ in the Ross Case, I conclude that plaintiff below may recover here, irrespective of his engagement in interstate commerce. The argument advanced by the defendant below that the New York state Workmen's Compensation Act takes away this right of action at common law is sufficiently answered by the reservation contained in the act itself quoted above, and by this construction placed upon the Safety Appliance Act. Liability is expressed and fixed by the statute itself, and is to be found therein. That federal act takes precedence over the state Workmen's Compensation Act. The plaintiff below should be accorded the right of recovery by virtue of the right of action given by this act. This right is extended to an employé for injuries received if injured while working for an interstate railroad because of a violation of the act, even though not at the moment engaged in interstate commerce.

A contrary view was expressed by this court in D., L. & W. R. Co. v. Peck, 255 Fed. 261, 166 C. C. A. 431, and is relied upon by this plaintiff in error; but the result there is irreconcilable with pronouncements of the Supreme Court and the result reached in other circuits to which I have called attention, and should therefore not be followed. My views are expressed in a concurring opinion for the reason that, in my opinion, the question of the application of the Safety Appliance Act and its questioned precedence over the state Compensation Act is squarely presented by this writ of error. The defendant in error may successfully rely upon the right of action accorded him under the Safety Appliance Act, and is not obliged to take compensation under the New York state Compensation Law.

For these reasons the judgment should be affirmed.