(No. 12820.—Judgment affirmed.)
GEORGE W. DAVIS, Defendant in Error, *vs.* THE MICHIGAN CENTRAL RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed October 23, 1920.*

1. NEGLIGENCE—*when an instruction as to measure of damages should not mention amount named in declaration.* In a suit under the Federal Safety Appliance act an instruction as to the measure of damages, which concludes with the statement that the damages should not exceed a certain sum, which was the sum claimed in the declaration, is improper without further explanation of such statement, as it implies that the jury may be warranted in giving the full sum claimed.

2. SAME—*when experts may give opinion evidence in an action under Federal Safety Appliance act.* In an action under the Federal Safety Appliance act brought by a railroad employee who was injured while coupling cars, expert witnesses may give opinion evidence to the effect that the couplers, in the position in which they were found by the employee, would not have coupled by impact if the employee had not manipulated the draw-bars as he did when he received his injury.

3. RAILROADS—*duty to provide automatic couplers is absolute under Federal Safety Appliance act.* Under the Federal Safety Appliance act an absolute duty to provide couplers automatically coupling by impact and which can be uncoupled without the necessity of going between the cars is imposed on railroads engaged in interstate commerce.

4. SAME—*assumed risk is not a defense under the Safety Appliance act—contributory negligence.* Assumed risk is not a defense under the Federal Safety Appliance act, nor can the action of the employee be defeated by the carrier showing that it has exercised reasonable care in providing and keeping in repair its safety appliances, nor by showing contributory negligence on the part of the employee when he is injured by reason of a violation of the act.

5. EVIDENCE—*what evidence admissible in action under Federal Safety Appliance act.* In an action under the Federal Safety Appliance act by a switchman who received an injury while coupling cars, evidence that a certain device is known and in general use for the purpose of keeping the draw-bars in alignment for coupling by impact without the necessity of going between the cars is admissible to show that the statute does not require an impossibility.

6. SAME—*when entries in book kept by car inspector are not admissible.* Entries in a book kept by a car inspector who examined the draw-bars and couplers on the day the plaintiff was injured while coupling cars are properly excluded from the jury in an action under the Federal Safety Appliance act, as such entries, made after the accident, are self-serving declarations when the making of them is not brought in issue in any way.

7. SAME—*when reporter's notes of plaintiff's statements to the claim agent of employer are not admissible.* In an action under the Federal Safety Appliance act for an injury received while coupling cars, a court reporter's notes of statements made by the employee to the claim agent of the employer just after the accident are not admissible when not verified by the signature of the employee nor by the reporter but are read by another stenographer, who admitted that he could not read all the notes.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the City Court of Chicago Heights; the Hon. CHARLES H. BOWLES, Judge, presiding.

WINSTON, STRAWN & SHAW, (SILAS H. STRAWN, and J. SIDNEY CONDIT, of counsel,) for plaintiff in error.

CHARLES C. SPENCER, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment of the city court of Chicago Heights for $5000 in favor of defendant in error in a suit for personal injuries received by him while in the employ of plaintiff in error, the Michigan Central Railroad Company. A writ of *certiorari* was granted and the judgment is sought to be reviewed on errors assigned.

The case was submitted to the jury on the second and third counts of the declaration, which charged a violation of the Federal Safety Appliance act, charging that plaintiff in error permitted to be hauled upon its tracks certain cars used in moving interstate commerce which were not

equipped with couplers that would couple automatically by impact and which could not be uncoupled without the necessity of its employees going between the ends of the cars, and also charging that the couplers, draw-bars and other coupling apparatus of said cars were out of order, improperly adjusted and the draw-bars turned to one side so that they would not couple automatically by impact.

The material facts proved are that defendant in error was a switchman in the employ of plaintiff in error for five years previous to his injury and who had ten or twelve years' experience as a switchman. At the time of his injury a caboose or way-car was standing on a straight track in plaintiff in error's switch yard in Chicago and a cut of cars was being moved north to couple onto the caboose or way-car. · The north car of the approaching cut of cars was a refrigerator car. The cars were being moved at a rate of speed a little faster than a man ordinarily walks. While defendant in error was standing about a car length north and west of the caboose he noticed that the draw-bar on the refrigerator car was pulled to the west as far as it would go and that its coupler was partly open. On looking at the caboose he saw that its coupler was partly open and was almost as far out of alignment to the east. When the cars were three or four feet from each other he took hold of the grab-iron on the end of the refrigerator car, raised his left foot and kicked the head of the draw-bar, which caused it to move to the center, and the coupling was made. Before he could remove his foot from between the couplers it was caught and crushed so that it became necessary to amputate a portion of it and he was thereby permanently disabled. The couplers on both cars were of the Simplex type. A fellow-brakeman examined the couplers of the caboose and the refrigerator car after the injury and found that they were coupled, the pins dropped in their proper places and the coupling properly made and locked in position so that the cars would hold. The couplers were

level and matched with each other up and down. The levers running to the sides were in proper position and properly connected with the couplers, with no apparent defect in the draw-bars. The train was then moved to Argo, and the car inspector at that place made an inspection and reported the couplers on the refrigerator car and the caboose in good condition. He found the draw-bar on the caboose to be five inches wide, five and three-quarters inches thick and with seven-eighths of an inch play on each side of the center of the draw-bar and the brackets holding the carry-iron, or a total of one inch and three-quarters of play. The draw-bar on the refrigerator car was five inches wide, seven inches thick and it had a play of an inch and three-quarters, or seven-eighths of an inch on either side. The draw-bars were thirty-four inches high from the top of the rails, and the knuckles, pins and pin-lifters were found in good condition. Both cars had a lever running from the couplers to one side of the car, the lever on the caboose running from the coupler to the west side of the car and the lever on the refrigerator car running from the coupler to the east side of the car. Neither car was equipped with any device by which the draw-bar would swing back or could be caused to swing to center when out of alignment, and therefore the draw-bars could not be properly aligned except by someone going in between the ends of the cars to make the alignment. The testimony of defendant in error is also to the effect that the two draw-bars were too far out of alignment to permit a coupling by impact. He testified that when the cars were about three feet from each other he saw that they were not going to make the coupling; that the draw-bars were pointing so far away from each other that he knew they would not couple by impact and that he kicked one draw-bar so that the coupling would be made; also, that he saw that the engineer was not going to stop the cut of cars in time to prevent the impact, although he had signaled him to do so.

The main contentions of plaintiff in error as grounds for a reversal of the judgment are that the trial court erred in the admission of incompetent testimony for defendant in error and in rejecting competent and relevant testimony for plaintiff in error. It is also contended that the court erred in the giving of certain instructions to the jury on behalf of defendant in error and in refusing to give certain other instructions on the part of the plaintiff in error. Upon examination of the instructions we find that they correctly state the law applicable to the Federal Safety Appliance act. There is one faulty instruction in regard to the measure of damages, which concluded with the statement that the damages were "not to exceed the sum of $25,000," which was the sum claimed in the declaration. Without further explanation this amounts to a statement to the jury that they might be warranted in giving the full sum aforesaid, but plaintiff in error was not prejudiced thereby as shown by the record before us.

It was not error in the court to admit opinion evidence to the effect the couplers, in the position in which they were observed by defendant in error, would not have coupled by impact if defendant in error had not kicked the drawbar in question to the center. This evidence was upon a question that properly called for the opinion of experts. *San Antonio and Aransas Pass Railway Co.* v. *Wagner,* (Texas) 166 S. W. 24, affirmed in 241 U. S. 479.

The duty and liability to provide couplers automatically coupling by impact and which can be uncoupled without the necessity of going between the cars is an absolute duty imposed on railroads engaged in interstate commerce, under the Federal Safety Appliance act. Assumed risk is not a defense under this statute. Neither can the action of the employee be defeated by the carrier showing that it has exercised reasonable care in providing and keeping in repair such appliances, nor by showing contributory negligence on the part of the employee when he is injured by reason of a

violation of the act. (*St. Louis, Iron Mountain and Southern Railway Co.* v. *Taylor,* 28 Sup. Ct. 616; *Chicago, Burlington and Quincy Railway Co.* v. *United States,* 31 id. 612; *Atlantic City Railroad Co.* v. *Parker,* 37 id. 69.) There is evidence in the record sustaining the proposition that the couplers in question would not have coupled by impact had defendant in error not driven the draw-bar on the refrigerator car toward the center with his foot.

The provision of the second section of the Safety Appliance act is: "It shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars." It was proved on the trial by defendant in error that there was in general use on railroad cars in the United States and in the State of Illinois a device by which a draw-bar turned to one side would be thrown back to center without shoving or kicking it over, and the witnesses were permitted to describe this device, "the swinging hanger," which has been in use since 1913. It was also proven by defendant in error that there was in use before May, 1917, a spring appliance to throw draw-bars back to center. This evidence was objected to as incompetent and prejudicial to plaintiff in error. It amounted to proof that the Federal statute did not require an impossibility, and that if plaintiff in error's couplers had been equipped with such an appliance the couplers in question would have coupled, as the cars were on a straight track and the draw-bars would have been in alignment for coupling without any necessity of their being driven into alignment by defendant in error as the cars were coming together. We do not see how plaintiff in error was prejudiced by this evidence. The statute certainly did not intend to require an impossibility as an absolute duty, and the proof in question serves to show that it did not require an impossibility. The most that could

be claimed for plaintiff in error is that the proof was un-
necessary.   We think the proof was proper because it shows
that plaintiff in error's appliances were defective in not be-
ing equipped with such a device as was known and in gen-
eral use and which would have prevented the injury to de-
fendant in error.   Draw-bars are· a part of the coupling
device and must not be allowed to become so defective or
wanting in construction that they fail to accomplish the ob-
ject of the statute.   *Chicago, Milwaukee and Puget Sound
Railway Co.* v. *United States,* 196 Fed. 882.

The entries in the book kept by the car inspector who
examined the draw-bars and couplers on the day of the ac-
cident were properly excluded from the jury.   A witness
for plaintiff in error was permitted to testify as to all the
facts contained in the entries and was permitted to refresh
his memory from the entries made by him in the book kept
by him.   There is no rule of evidence making such entries
admissible where the making of them is in no way brought
in issue.   They were made after the accident and were self-
serving declarations.

The court properly denied the right to plaintiff in error
to have the reporter's notes of statements made by the de-
fendant in error just after the accident, and made at the
instance of plaintiff in error's claim agent, read to the jury
by another stenographer, who admitted that there would be
some fifteen or twenty words that he would not be able to
read correctly.   Defendant in error did not deny that he
made the statements contained in the notes and typewritten
statement offered by plaintiff in error, but testified that at
the time the answers were given he was in such pain and
suffering that he did not know what he answered to the
questions propounded by the claim agent.   The claim agent
was allowed to testify as to the statements defendant in
error did make on that occasion, and they were not denied.
The court reporter's notes were not admissible in evidence
because they were not verified by the reporter who made

them, who was overseas in the service of the government at the time of the trial, and the notes were not made in any trial or proceeding where the defendant was represented. Besides, it is admitted that the interpreter who proposed to read the notes could not correctly read all of them. The transcript of the notes made by the reporter who took them was inadmissible for want of verification and the signature of defendant in error to it. It amounted to a mere statement by a third party, out of court and not sworn to.

We find no reversible error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*