WEEKLY v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Sixth Circuit. March 4, 1925.)

No. 4057.

Master and servant ⊂⊃285(7)—Evidence to show death of brakeman was caused by defective coupler held insufficient as matter of law.

In an action for death of brakeman, who was killed when he went between two standing cars to make a coupling when they were brought together, evidence *held* insufficient as matter of law to show that the coupler on either car was defective, or that, if defective, it was the proximate cause of the accident.

In Error to District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action at law by M. L. Weekly, administrator of the estate of Clarence E. Domer, deceased, against the Baltimore & Ohio Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

E. C. Chapman, of Cleveland, Ohio, for plaintiff in error.

W. T. Kinder, of Cleveland, Ohio (Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Domer, a brakeman upon the Baltimore & Ohio Railroad, was caught between freight cars being coupled and was killed. This action by his administrator, brought under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), came to trial before a jury; and at its conclusion the court instructed a verdict for defendant. The only question presented to us is whether there was substantial evidence that the coupling device did not reach the standard prescribed by the Safety Appliance Act (Comp. St. § 8605 et seq.). This requires a fuller statement of fact.

The freight car, which carried one of the couplers and may be called car A, was with six others standing at night upon an industrial side track, which track at this point was upon a slight curve—according to the map not over one or two degrees. The freight train which was to take these cars away, and upon which Domer was brakeman, came along upon the adjacent main track, and ran past the cars on the side track, and past the switch point shortly beyond. The train was then to back in and pick up these cars. At or near the switch point Domer

dropped off his train and walked back toward car A and the other cars standing there, in order to observe and be useful in and about the coupling of them to the train when it should back in. Of the cars standing there waiting to be pulled out, the one next to A toward the backing train, which may be called car B, carried the usual coupler intended to interlock with that on car A, and stood about four feet away. As the backing train approached the vicinity of B, Domer was seen to step in between A and B, and so to disappear from the sight of those who were looking along the side of the train. He was in some way caught by the impact and killed. There is a considerable amount of testimony that the adjacent couplers of A and B were found the next morning in perfect order and were completely operable, as they should be, by the coupler rods extending beyond the end of the car sill. Upon car A this rod projected to the side opposite Domer's position before he went in. Upon car B, the rod projected the other way. There is nothing to indicate that either coupler was not up to the statutory standard of safety, except as such inference may be drawn either from the fact of the accident or from the testimony now to be stated.

After the accident, cars A and B were left standing where they were until the next day. The evidence tends to show that immediately upon the accident the jaw of coupler B was properly open, while that of A was closed, so as to be in noncoupling condition. It was assumed by all parties upon the trial that the actual fault, if any, was in the car A coupling; if possibly there was anything wrong with the other one, there is nothing to indicate that the defect played a causative part in the trouble; and coupler B may be dismissed from consideration. Early the next morning, and before car A was disturbed, this coupler was inspected at different times and separately by two railroad inspectors. Each testifies that he examined it thoroughly and it was in perfect order. At the time of one of these inspections (there is confusion as to which one) two or three workmen employed in the adjacent industry were standing opposite and behind the inspector as he faced the car and a few feet away from him. Out of curiosity they were observing. The one of these observers who testified most clearly says of the inspector: "The first thing he done, he took hold of the lever * * * and tried to jerk the knuckle open. He pulled on it and the coupler started open, I suppose it

came open one-third of the way, and then he had to take his hand and pull it the rest of the way open. He moved the cutting lever several times around, I don't know how many times." Later this witness, who was not a railroad man, and had never tried to open a coupler before, tried for himself two or three times, pulling the lever "pretty hard," and the jaw did not come open more than two and a half inches.

We greatly doubt whether this testimony affords any substantial basis for an inference that this coupler was not one which would "couple automatically by impact and which can be uncoupled, without the necessity of men going between the ends of the cars," within the meaning of the statute. It is not necessary to consider in what way the statute should be interpreted, as to its application to the occasional instance where it may be necessary, or may seem to be necessary, to align the draw bar or to open the coupler jaw wider than common, and for the brakeman for one or both of these purposes to put all or part of his body past the corner of the car, or to consider how the statutory language "necessity of man going, etc." may be applied to situations when no coupling is imminent. See Davis v. Mich. Cent. R. R., 294 Ill. 355, 128 N. E. 539; Payne v. Colvin (C. C. A. 8) 276 F. 15, 17. Likewise we pass by, only expressing doubt, the question whether the testimony indicates that this coupler would not open as fully as could be reasonably required. When the witnesses say it did not open fully for the inspector, they clearly draw an inference from his conduct in trying the rod and then going to the coupler and manipulating it with his hand; but this would be necessary, to close the jaw, so as to try the rod again. When the witness says that to his pull upon the rod the coupler responded with only a partial jaw opening, it is still probable enough that a proper pull, by an experienced man, would throw the jaw wide open.

We think the clearest ground for supporting the result below is this: Even if it be assumed that a coupler with a jaw which is not opened more than two or three inches by working the coupler rod is defective, and also that this coupler was defective in this particular, it does not appear that such defect was the proximate cause of Domer's accident. See McCalmont v. Pa. Ry. (C. C. A. 6) 283 F. 736; Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284. Upon the basis of these suppositions, it would follow that, when Domer looked at the coupling and saw that the jaw was not properly placed and opened, it might have been closed or partly open. If closed, that could not be charged to a past imperfect rod-opening; nor, if not fully open, could it be so charged, because any one of many ordinary happenings might have partly closed it after it had been once fully opened. To conclude that Domer went in because the jaw was only partially open, and that it was in this shape because of defective rod operability, would be not only to base inference on an inference, but the second one would be unsound. If the jaw had been closed, or insufficiently opened, and Domer had then passed by it to the further side of the car, and tried to open it with the rod, and failed, and then had come back to open it with his hands, the defect would have been the proximate cause of the injury; but this course on his part is highly improbable. It could not be rightly inferred without some supporting evidence. Standing as he was on the opposite side of the car from the rod, and seeing that the coupler needed opening, it was his natural, if not certain, course of conduct to open it with his hands, without trying the rod.

With this environment, it is also clear that the fact of noncoupling by impact does not give substantial support to an inference that the coupler rod was inoperative. See Penn. Co. v. Jones (C. C. A. 6) 300 F. 525.

The judgment is affirmed.