# DAVIS, DESIGNATED AGENT UNDER THE TRANSPORTATION ACT, v. WOLFE.

## CERTIORARI TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 71.   Argued October 12, 1923.—Decided November 12, 1923.

1. Where a failure of a railway company to comply with the Safety Appliance Act is the proximate cause of an accident resulting in injury to an employee while in the discharge of his duty, he may recover, although the operation in which he was engaged was not of the kind in which the appliances required by the act were specifically designed to furnish him protection. P. 241.

2. So *held* where a conductor, engaged in signalling orders for the movement of a freight train while riding on the side of a car with his feet in a sill-step and one hand grasping a grab-iron, was thrown to the ground, as the train moved forward contrary to his order, and was run over, his fall being attributable to the loose condition of the grab-iron.

294 Mo. 170, affirmed.

CERTIORARI to a judgment of the Supreme Court of Missouri affirming a judgment recovered by a railway employee in an action for personal injuries, under the Federal Employers' Liability Act.

Mr. *Frank H. Sullivan,* with whom Mr. *Thos. P. Little-page,* Mr. *William O. Reeder* and Mr. *Homer T. Dick* were on the brief, for petitioner.

Mr. *Sidney Thorne Able* and Mr. *P. H. Cullen,* for respondent, submitted.   Mr. *Charles P. Noell* and Mr. *Walter L. Brady* were also on the brief.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The respondent Wolfe brought this action in a Circuit Court of Missouri to recover damages for personal injuries suffered by him while employed as the conductor

of a freight train on a railroad under federal control, basing his right of recovery upon the Employers' Liability Act in connection, primarily, with an alleged violation of the provisions of the Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. 531, as amended by the Act of March 2, 1903, c. 976, 32 Stat. 943. He had a verdict and judgment; and the judgment was affirmed by the Supreme Court of the State. 294 Mo. 170.

The petitioner contends that there was no evidence to take the case to the jury under the Safety Appliance Act and that it was erroneously held to be applicable in the situation presented.

Section 4 of the original act, as amended by the Act of 1903, provides that, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful to use on any railroad engaged in interstate commerce any car " not provided with secure grab irons or handholds in the ends and sides . . .. for greater security to men in coupling and uncoupling cars." *Southern Railway* v. *United States*, 222 U. S. 20, 24.

It was undisputed that the carrier was engaged in interstate commerce and that Wolfe was employed in such commerce. As found by the Supreme Court of Missouri his evidence tended to show the following facts: While the freight train of which he was conductor was at a station, moving slowly, he was standing on the side of one of the cars, with his feet in a sill-step fastened to the bottom of the car within about a foot of its end, and holding on with his right hand to a grab iron or handhold directly over the sill-step and about three or four feet from it. This grab iron consisted of a round iron bar bent at the ends, which were bolted into the wooden side of the car. The wood had rotted or been worn away, so that the bolts had a play or movement of about an inch, which made the grab iron loose and defective and permitted it to move to that extent. While thus standing on the sill-

step and holding on to the grab iron with his right hand, Wolfe signalled the fireman with his left hand to stop the train. But instead of stopping it moved forward with a violent jerk at accelerated speed, and by reason of the movement of the loose grab iron to which Wolfe was holding, he was caused to fall to the ground beside the car and one of its wheels ran over his left arm and injured it so that it had to be amputated at the shoulder joint. It was, furthermore, not unusual for conductors or brakemen to stand in the sill-step and hold on to the grab iron to signal orders as to the movement of the train. The loose condition of the grab iron was not disputed.

The argument in behalf of the petitioner is, in substance, that on these facts Wolfe was not in a situation where the defective grab iron operated as a breach of duty imposed for his benefit by § 4 of the act, which, it is urged, merely requires the furnishing and maintenance of grab irons in behalf of employees engaged in coupling or uncoupling cars or a service connected therewith, and does not require them as a means of, or aid to, the transportation of employees.

While there is no previous decision of this Court relating to this aspect of § 4, a controlling analogy is to be found in its decisions as to the application of § 2 of the act, which, as amended, makes it unlawful to use on a railroad engaged in interstate commerce any car not equipped with automatic couplers capable of being coupled and uncoupled "without the necessity of men going between the ends of the cars." This section has been considered in four cases in which the injured employees were not engaged either in coupling or uncoupling or in any service connected therewith:

In *St. Louis Railroad* v. *Conarty*, 238 U. S. 243, a switch engine ran, in the dark, into a standing car whose coupler and drawbar had been pulled out, and the engine,

in the absence of these appliances, coming in immediate contact with the end of the car, a switchman riding on the footboard of the engine was caught between it and the body of the car; and in *Lang* v. *New York Central Railroad*, 255 U. S. 455, through failure to stop in time a string of cars that had been kicked in on a siding, it ran into a standing car whose coupler attachment and bumpers were gone, and the brakeman on the end of the string of cars was caught between the car on which he was riding and the standing car. In these cases it was held that, the collisions not being proximately attributable to the absence of automatic couplers on the standing cars, the carriers were not liable for the injuries received by the employees, even if the collisions would not have resulted in injuries to them had the couplers been on the standing cars, the requirement of automatic couplers not being intended to provide a place of safety between cars brought into collision through other causes.

In *Louisville Railroad* v. *Layton*, 243 U. S. 617, the failure of couplers to work automatically in a switching operation resulted in a collision of cars, from one of which a brakeman was thrown while preparing to release brakes; and in *Minneapolis Railroad* v. *Gotschall*, 244 U. S. 66, a brakeman was thrown from a train as the result of defective couplers coming open while the train was in motion. In these cases, the defect in the couplers being in each the proximate cause of the injury, it was held that the employees were entitled to recover. In the *Layton Case* the Court, after specifically distinguishing the *Conarty Case* on the ground that in that case the collision resulting in the injury was not proximately attributable to a violation of the act (p. 620), said:

"While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employees who were obliged to go between cars to couple

and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employees only when so engaged. The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required,—not from the position the employee may be in or the work which he may be doing at the moment when he is injured. This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty." (p. 621.)

The doctrine of this case was explicitly recognized in the *Lang Case,* in which the *Layton Case* was distinguished, on the facts, on the ground that " necessarily there must be a causal relation between the fact of delinquency and the fact of injury " (p. 459).

The rule clearly deducible from these four cases is that, on the one hand, an employee cannot recover under the Safety Appliance Act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand, he can recover if the failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection.

This construction of the act is substantially that given by the Circuit Courts of Appeals of the Second, Fourth and Sixth Circuits in *Director General* v. *Ronald*

(C. C. A.), 265 Fed. 138; *Philadelphia Railway* v. *Eisenhart* (C. C. A.), 280 Fed. 271, and *McCalmont* v. *Pennsylvania Railroad* (C. C. A.), 283 Fed. 736; and by the state courts in *McNaney* v. *Chicago Railway*, 132 Minn. 391, and *Ewing* v. *Coal Railway Co.*, 82 W. Va. 427.

It results that in the present case, as there was substantial evidence tending to show that the defective condition of the grab iron required by § 4 of the Safety Appliance Act was a proximate cause of the accident resulting in injury to Wolfe while in the discharge of his duty as a conductor, the case was properly submitted to the jury under the act; and the issues having been determined by the jury in his favor the judgment of the trial court was in that behalf properly affirmed.

The judgment of the Supreme Court of Missouri is accordingly

*Affirmed.*