## ATCHISON, T. & S. F. RY. CO. v. KEDDY.*

Circuit Court of Appeals, Ninth Circuit.
November 5, 1928.

No. 5567.

Robert Brennan, M. W. Reed, Leo E. Sievert, and E. T. Lucey, all of Los Angeles, Cal., for appellant.

Paul Blackwood, of Los Angeles, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

*Rehearing denied January 14, 1929.

GILBERT, Circuit Judge. The defendant in error, as plaintiff below, recovered a judgment for injuries sustained by him while engaged in coupling cars of a freight train on which he was head brakeman. He was charged with the duty of attending to the switching operations of the train at the station of Atwood. He first opened a switch whereby the engine was brought to a waterspout for water. The conductor then entered the station to get his train orders, and, returning, directed that the rear portion of the train be cut off, and that the remaining 24 cars, with the engine, proceed easterly until they were on a designated main line. The plaintiff, therefore, cut off all but the foremost 9 cars. The next operation was for the engine to move easterly and set 8 of the 9 cars on another track, after which the engine, with the remaining one car, was to return and couple on the cars left standing on said main line. But after the plaintiff had cut off the 9 cars attached to the engine, and was adjusting a defective knuckle on the east end of the cars remaining on said main line, the engine with the 9 cars attached thereto, after proceeding eastward a short distance, came back, without signal, against the car where the plaintiff was so engaged, and caught his hand between the drawbars. He alleged in his complaint that the proximate cause of the accident was the negligence of the defendant in backing the cars as aforesaid, and in negligently using an old, defective, and unsound drawbar knuckle, to operate which required the plaintiff to go between said cars.

The defendant assigns error to the denial of its motion for an instructed verdict in its favor, based on the grounds that the evidence was insufficient to show negligence, that the accident did not result from the performance of any duty devolving upon the plaintiff, that he assumed the risk of the accident and was guilty of negligence and recklessness, and that there was no evidence to show a violation of the Safety Appliance Act. We think there was clearly sufficient evidence to go to the jury on the question of negligence in the operation of the portion of the train which came back upon plaintiff while he was engaged in attempting to adjust the coupling. The contention of defendant is that the backward movement of the cars was but for the purpose of taking up the slack, and the engineer, it is true, testified that it was not the custom to give a signal before backing a train sufficiently far to take up the slack; but the decided weight of the testimony was that there was no slack, that

the cars attached to the engine stood on a track that was slightly upgrade; and the testimony of the plaintiff, supported by others, was that after making the cut the plaintiff gave the engineer a signal to go forward, and that the latter answered the signal and went forward, and had proceeded a distance considerably greater than any possible slack that could have existed in that number of cars. The plaintiff testified: "I say, any time the engineer wants to back up without a signal, he must blow the signal three times, and then before he backs up receive a signal from me or one of the trainmen. That applies if he wants to back up a couple of feet to get the slack to go forward. It applies any time." That testimony was corroborated by a witness who had worked as engineer and fireman for the defendant for nine or ten years.

The defendant stresses the contention that at the time of the accident the plaintiff was not engaged in coupling cars, but was engaged in doing an unnecessary act, and was voluntarily assuming the risk of prematurely preparing a coupler, so that thereafter it would couple automatically by impact, and that the defective coupler was not the proximate cause of the accident, thus invoking the rule that, if the failure to comply with the requirements of the Safety Appliance Act (45 USCA § 1 et seq.) is not the proximate cause of the accident, but merely creates an incidental condition or situation in which the accident otherwise caused results in injury, the employee cannot recover. Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284. But, as we take the law to be, there was evidence that at the time of the accident the plaintiff was engaged in a coupling operation, in this: That he was preparing what he testified to be a defective coupling appliance, in order to accomplish quickly the coupling operation by impact when the engine and its accompanying cars should return for that purpose, and that his object was to avoid loss of time, and thus comply with the defendant's posted rules, which held employees to strict account for delays to trains resulting from bad management on their part. The rule contained the following provision: "Promptness and dispatch are earnestly enjoined in transacting business at stations, taking water, oiling, etc. Station work should, when possible, be done immediately on arrival."

The plaintiff's testimony that the work which he was engaged in performing was in the regular course of the operation of the train and a part of his duty was corroborated by several other employees. Green, a brakeman and switchman, testified: "That is always done in practical railroading, by men operating trains of that character, in that place. He would leave the knuckle open on the fourteenth car, on the east car, that he was leaving there on the track, so he could couple in when he came back." Couse, formerly a brakeman for defendant, testified: "The necessity of opening that knuckle on this eleventh car is so that they will couple automatically by impact when you are coming back, without having to stop your train." There was testimony of other employees to the same effect, including the conductor, Metzgar, who said: "It is the custom, if you are going back to pick up cars, to leave the knuckle open."

The plaintiff testified that, after making the cut of the train, he had other duties to perform in connection with the cut; that he had to leave the knuckle open on the forward car on the main line, "because that was the duty of the man that makes the cut to leave that open, so that on our return from the main track we could couple onto it automatically." And he said that the reason for that course was that, if he failed to open the knuckle at that time, he would have to stop the engineer on the return, and then go ahead and operate the knuckle, and then return and give them the back-up signal to come along, which, he said, "would have consumed valuable minutes." He testified that he crossed over to the other side, the south side, and tried to open the knuckle; that he went over there to operate the pin lifter, because it was over on that side; that he then jerked on that lever three or four times, and tried to open the knuckle, but could not open it; that he then took hold of it with his hand and tried to pull it open, and that he then returned to the north side of the train, and went in between the cars from that side, and in order to prepare the knuckle he raised the pin with his right hand to pull it open, "which was the only way I could get it open"; and while he was there in that position the cars came back and caught his hand between the drawbars.

The defendant relies upon the decisions in St. Louis & San Francisco R. Co. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. Ed. 1290, McCalmont v. Pennsylvania R. Co. (D. C.) 283 F. 736, Lang v. N. Y. C. R. Co., 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729, and Illinois State Trust Co. v. Missouri Pac. R. Co. (Mo. Sup.) 5 S.W.(2d) 368. In the Conarty Case the personal injuries were received in a collision between a switch engine

and a loaded freight car, which had no coupler or drawbar on the end thereof, and which was about to be placed on an isolated track for repair. The switch engine on which the deceased was working collided with it. The court held that the deceased was not within the class of persons for whose benefit the Safety Appliance Acts were intended; that they were intended for the protection of those who were required to handle the coupling devices; that the risk of coupling and uncoupling was the evil sought to be remedied; and that the deceased, who was not endeavoring to couple or uncouple the car or to handle it in any way, was not in a situation to say that the absence of the prescribed coupler and drawbar operated as a breach of a duty imposed for his benefit. So in the Lang Case, the plaintiff was not attempting to couple onto a defective car and his only concern was to prevent contact with it. Said the court: "It was [his] duty * * * to stop the colliding car and to set the brakes upon it 'so, as not to come into contact with the crippled car.' "

It is not seen that either case has any relevancy to the questions involved in the case at bar. Nor is the McCalmont case in point. McCalmont was not a brakeman engaged in coupling or uncoupling trains, but was a foreman of car inspectors, and was working upon a car which had stood for hours and might still stand an indefinite time upon a track used as a receiving station for the car hospital. He went between cars, against his helper's warning, in order to shorten a chain by which, for lack of a drawbar and coupler, the cars were united. But there was no hauling of those cars in progress or about to be undertaken. In Illinois State Trust Co. v. Missouri Pac. R. Co., the deceased, who was foreman of a switching crew, had suspended switching movements to repair a defective coupler. The engine had gone elsewhere for water, and one of the switchmen was sent to his supper, and operations of the train were for the time suspended. While the deceased was so engaged, a car which had been left standing moved silently and from no known cause until it struck him. It was held that he was not killed in a coupling or uncoupling movement, nor as a result of such movement, and that violation of the Safety Appliance Act was not the proximate cause of his death.

Applicable to the present case and similar to its facts is Chicago, M. & St. P. Ry. Co. v. Voelker (C. C. A.) 129 F. 522, 70 L. R. A. 264, in which Circuit Judge Van Devanter, in answer to the contention that Voelker was not attempting to make a coupling, but was simply opening the knuckle of a defective coupler, the defect in which rendered it more difficult to open and prepare for the coupling impact, said: "The contention that the preparation of the coupler for the impact is distinct from the act of coupling is a mistaken attempt to separate a part of an act from the whole. The preparation of the coupler and the impact are not isolated acts, but connected and indispensable parts of the larger act." In Chicago Junction Ry. Co. v. King (C. C. A.) 169 F. 372, the court followed the ruling in the Voelker Case and said: "There was evidence to support a finding that it was within the scope of plaintiff's duty to endeavor to repair the coupler, so that the train might be put together and the crew proceed with their work of distributing the cars," and the court observed that, "under such circumstances, plaintiff would have the right to assume, until he had some notice to the contrary, that the conductor would not order the train to be moved and that the engineer would not start the locomotive." The decision was affirmed in 222 U. S. 222, 32 S. Ct. 79, 56 L. Ed. 173.

The Voelker Case was followed, also, in Erie R. Co. v. Russell (C. C. A.) 183 F. 722. There a crew was engaged in switching cars from different trains; one car had a defective coupler; the intention was to repair the coupler, and after repairing it to couple the train containing that car to three cars which had been left upon the switch. The plaintiff's intestate went between the cars and attempted to replace a knuckle to remedy a defective coupler; while holding the knuckle, the three standing cars, without apparent cause, moved down and caught him. It was contended that the unexpected movement of the three cars was an act unrelated to the act of repairing the coupler. The court held that the trial court had properly submitted to the jury the question whether the presence of the defective coupler was the proximate cause of the accident.

In Minneapolis, etc., Ry. Co. v. Goneau, 269 U. S. 406, 46 S. Ct. 129, 70 L. Ed. 335, the plaintiff was a rear brakeman on a freight train which broke in two between stations in the nighttime. The two sections stopped a few feet apart on a narrow wooden bridge with open ties. The cause of the break was a defective coupler. The plaintiff, having ascertained that fact, undertook, as was his duty, to get the train coupled up again. To do this he stood between the cars on the open ties and while struggling with the carrier iron his right foot dropped between the

ties, and, losing his balance, he fell over the side of the bridge to the ground below, sustaining serious injuries. The contention of the railroad company was that the evidence did not bring the case within the Safety Appliance Act; that the defective car was not then in use, and that the plaintiff was engaged, not in coupling operations, but was doing repair work. But the court held that he was engaged in the work of coupling cars, and that since he was injured as a result of the defect in the coupler, while attempting to adjust it for the purpose of making an immediate coupling, the defective coupler was clearly a proximate cause of the accident, as distinguished from a condition creating the situation in which it occurred.

Among other cases in point are Louisville & Nashville R. Co. v. Layton, 243 U. S. 617, 37 S. Ct. 456, 61 L. Ed. 931, and Minn. & St. Louis R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995. In the Layton Case there was failure of couplers to work automatically in a switching operation, resulting in a collision of cars, from one of which a brakeman was thrown. The court, after distinguishing the case from the Conarty Case, said: "The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required; not from the position the employee may be in or the work which he may be doing at the moment when he is injured. * * * Carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty." In the Gotschall Case, defective couplers came open while the train was in motion. It was held that a brakeman thrown from the train as the result was entitled to recover. In Davis v. Wolfe, 263 U. S. 239, at 243, 44 S. Ct. 64, 68 L. Ed. 284, the court declared the rule finally deducible from the decisions to be that the employee can recover if the failure to comply with the requirements of the act is a proximate cause of the accident resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection.

Error is assigned to an instruction wherein the court, after referring to the fact that the knuckle on the car was operated by the use of a "lift pin lever," charged the jury that it was the absolute duty of the defendant to equip the car with a coupler that would work automatically by rise of the lift pin lever at all times, and that, if they found that the coupler failed to operate at the time and place of the accident, and that the plaintiff in the performance of his duty went in between the cars to operate the same, and was thereby injured, it was immaterial whether the coupler was operated prior to or after the occurrence of the accident. The defendant saved a general objection to the instruction, without specifying wherein it was claimed to be erroneous. It now asserts that the instruction was error, because it told the jury that it was the duty of the defendant to equip its cars with a coupler that would work automatically by rise of the lift pin lever at all times, whereas the law requires only that the defendant shall have its cars equipped with couplers that will operate automatically by impact, and makes no provision that they shall be equipped with a coupler that will work automatically by the rise of a lift pin lever. We think the instruction was clearly appropriate to the case, for the reason that the undisputed evidence was that the coupler on the car in question was in fact operated only by raising a lift pin lever on the side of the car, without going between the cars.

We find no error. The judgment is affirmed.