## NEW YORK, C. & ST. L. R. CO. v. AFFOLDER.

### No. 13858.

United States Court of Appeals
Eighth Circuit.

May 10, 1949.

Rehearing Denied June 9, 1949.

Lon O. Hocker, Jr., of St. Louis, Mo. (Jones, Hocker, Gladney & Grand, of St. Louis, Mo., on the brief), for appellant.

William H. Allen, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, RIDDICK, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The plaintiff recovered judgment for $95,000.00 for personal injuries for an alleged violation of the provision of the Safety Appliance Act that:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 45 U.S.C.A. § 2.

Upon motion for new trial a remittitur of $15,000.00 was ordered and made. From the judgment, defendant appeals. Three grounds for reversal are asserted: First, that there was error in the instructions; second, that if the Safety Appliance Act was violated, such violation was not the proximate cause of plaintiff's injury; and third, that the verdict was excessive.

Plaintiff lived at Fort Wayne, Indiana, and was employed by defendant in interstate commerce as a switchman in defendant's yards at Fort Wayne at the time of his injury on September 24, 1947. He was one of a crew of five men comprising a switch engine crew engaged in the classification of cars in the defendant's yards at Fort Wayne. The switch tracks involved herein were substantially parallel and ran east and west, sloping toward the east. In classifying, or sorting, the cars in the yard six or seven cars were run onto the eastbound main switch from the west and stopped approximately fifteen car lengths west of the east end of that switch track. Plaintiff, the "field man" of the crew, had the duty of setting the brakes on cars spotted and attending to duties away from the engine. The other switchman stayed with the engine and such cars as might be attached thereto. Plaintiff set the brake on one of these six or seven cars in order that they would remain in place as others were added. The process of sorting or classifying the cars in the yard proceeded until 25 cars had been accumulated on this particular track. The west car of this group of 25 was a Rock Island car. When the Rock Island car was put on this track, it was "kicked in"—an operation consisting of the engine giving it a "bump" from the west, starting it rolling east on the east-bound main switch, then cutting it loose from the engine and allowing it to roll on down to the other cars and automatically couple to them by impact. When the Rock Island car was cut loose from the engine the coupler at its west end was opened by the other or "head" switchman in order that the next car that was added would automatically couple to it. The next car to be added was a Pennsylvania hopper car. When it was "kicked in," the coupler on its east end was opened by the "head" switchman. If the couplers were operating properly and either the one on the west end of the Rock Island car or the one on the east end of the Pennsylvania car was open the cars would automatically couple and become locked together, hence the opening of the coupling on the east end of the Pennsylvania car at that time was a precaution against the possibility that the Rock Island car's west coupler had become closed by its impact with the other 24 at the time it was "kicked" in against them. When the coupler on the Pennsylvania car was opened the head switchman testified that the lever "bound," or stuck, requiring two or three efforts on his part to open it. Later the lever bracket was found to be bent. There was testimony pro and con as to whether that would interfere with the automatic working of the coupler. The head switchman was positive in his testimony that although he had some difficulty in doing so, he put

the coupler on the east end of the Pennsylvania car in proper position to operate on impact. The Pennsylvania car was "kicked" down to the Rock Island car, but unknown to the crew at that time, it did not couple. Three other cars were added to the group on this track in either two or three separate operations. When the last, or twenty-ninth, car was added, plaintiff was completing an operation of riding a car down on the fifth track south of the east-bound main track. This last operation incident to the 29 cars consisted of the engine shoving a car east against those already on the east-bound main, then shoving the entire group east along the track to make room for the twenty-ninth car. But when the engine had shoved the entire group a sufficient distance east and stopped, a separation occurred between the Rock Island car and the Pennsylvania car and all of the 25 cars east of the Pennsylvania car left those coupled to the engine and continued to roll down the track to the east. When they had gone approximately two car lengths plaintiff saw they were loose and, having been frequently instructed to stop cars under such circumstances, ran north across the intervening tracks toward the loose cars for the purpose of setting a brake on one of them to stop them. When he got almost to the east end of the west, or Rock Island, car, and approximately two or three feet from it, he stepped on something that rolled under his foot and caused him to fall forward under the car. The wheels of the car ran over his right leg and so mangled it that it was necessary to amputate it, leaving a stump only four inches in length.

■ The parties are in agreement that the failure of the Pennsylvania and Rock Island cars to couple on impact was sufficient evidence from which the jury could, if it saw fit, properly infer that defendant had violated the Safety Appliance Act in not equipping its cars with "couplers coupling automatically." That is the law. Chicago, R. I. & P. R. Co. v. Brown, 229 U.S. 317, 33 S.Ct. 840, 57 L.Ed. 1204; Southern R. Co. v. Stewart, 8 Cir., 119 F.2d 85; Minneapolis & St. Louis R. Co. v. Gotschall, 244 U.S. 66, 37 S.Ct. 598, 61 L.Ed. 995. The trial court so understood it.

And there was no dispute concerning the fact that these cars did not couple automatically. Defendant contended at the trial that this was not because they were not properly equipped with automatic couplers but was more likely caused by the closing of the coupler on the Rock Island car on its impact when it was kicked in, a contingency which the testimony indicated was not unusual, and the failure of the head switchman to open the coupler on the Pennsylvania car when it was sent down against the Rock Island. If both couplers were closed, there could have been no automatic coupling of the cars on impact even if the couplers were in proper condition.

The error assigned to the trial court's instruction is that by the charge on this point the court unintentionally misled the jury by instructing in effect that the separation of the cars was not only prima facie evidence of a violation from which the jury could infer a failure to properly equip the cars with automatic couplers in proper condition, but actually amounted to an instruction that all that it was necessary for the jury to find in order to entitle plaintiff to a verdict (if the failure to couple was the proximate cause of injury) was that the cars did not couple—a conceded fact. Thus, the defendant contends, it was deprived of its defense that the cars were properly equipped with proper automatic couplers and that the failure of these two cars to couple on impact was because the coupler on the Pennsylvania car had not been properly opened. The question is therefore not one of law but of construction of the court's instructions on this subject.

At the conclusion of the charge, defendant specifically raised the question it now pursues. The applicable portions of the charge are as follows:

"Now, bear in mind that these instructions are given to you as a whole. Don't attempt to separate them and use part of them in determining the issues and disregarding the remainder, because in that way your verdict would not be applicable. They are given to you for use and application to the case and to guide you in your deliberations as a whole, and I hope

as a whole that they will be intelligible to you.

\* \* \* \* \* \*

"This case is based upon a charge by the plaintiff that the defendant failed to comply with the federal law, or a federal statute, known as the Federal Safety Appliance Act, and, briefly, this law prohibits all railroads operating in interstate commerce to use any car in interstate commerce that is not equipped with couplers which couple automatically on impact.

"It is the position of the plaintiff in this case, as I understand the record, that on the occasion in question, the 24th day of September, of last year, he was a brakeman in the defendant's yard; that on this main east and west track there was a separation of the cars on that track. The numbers of the two cars where the separation occurred were given to you, but I prefer to use the names of the cars, because I think that is much easier for you to remember. One of the cars was referred to as a Pennsylvania car, and another car was referred to as a Rock Island car; and between these two cars the coupling, for some reason, and that is for you to determine, was not connected, and they separated, and the string of cars to the east of the break, some twenty-five cars started a movement to the east, and the plaintiff, who was some four or five tracks to the south of the track upon which this movement was located, some 3:00 o'clock in the morning, the searchlights in the yards, some evidence about the obscuring of vision by beam or smoke from cranes, but he saw the movement of these cars start to the east.

"As I recall his testimony, he said that he hurried over there, and that he reached a point very close to the car that he intended to get on; I believe he said some two or three feet; that is not exactly material, whether it was two or three feet, but anyhow, for some reason, so he testified, his foot stepped on some object, or for some reason he slipped, or fell, when he was attempting to board the car, and his leg passed over the rail, under the wheel, and received injuries which caused this amputation.

"He testified that he was going to the car to get on it for the purpose of setting the brake and stopping the movement of the car.

"Now, it is the position of the plaintiff, as I understand it, that the separation of the cars which started this movement which the plaintiff testified he was going to attempt to stop, and which he testified was a part of his duties, it is the position of the plaintiff that the separation was due to the failure of the defendant to equip the cars with couplers that couple automatically on impact. And that, second, the failure that I have just referred to was the proximate cause of the plaintiff's injuries.

"Now, on the other hand, as I understand it to be the position of the defendant, no denial but what there was a separation of cars, but the defendant denies that the separation was due to any failure on its part to equip or that the cars were being used without being equipped with couplers which couple automatically on impact. And, second, that regardless of what caused those two cars to separate, it is further the position of the defendant that the failure of the cars to remain together, or, I might put it, a separation of the cars, was not the proximate cause of the plaintiff's injuries.

"Now, that, as I understand it, states the respective positions of the parties. So the case resolves itself down to a very simple issue: a decision on two questions by you:

"Did the defendant use cars in interstate commerce on the occasion in question that were not equipped with couplers that coupled automatically on impact, first?

"Second, if the defendant violated the statute in the respect I have just referred to, was such violation the proximate cause of the plaintiff's injury?

\* \* \* \* \* \*

"Under the law as I have referred to, in this case the defendant had an absolute and continuing duty not to haul or use on its lines any car not equipped with couplers coupling automatically on impact. And it was not only the duty of the defendant to provide such couplers, but it was under the further duty to keep them in such operative

condition that they would always perform their function.

"The plaintiff, in order to discharge the burden of proving a breach of defendant's duty, is not required to prove the existence of any defect in such coupler, but need only prove that any such coupler did in fact fail to couple automatically by impact.

"Now, I charge you in this case that if you find and believe from the evidence that at the time and place mentioned in evidence, defendant was hauling or using on its lines one or more cars equipped with couplers which did not couple automatically on impact, and that by reason thereof a separation occurred between the Pennsylvania hopper car and the Rock Island box car, and that said separation was due to a failure on the part of the couplers of either car to function properly and to couple automatically on impact, then in that event you are instructed that the defendant violated the Safety Appliance Act that I have referred to.

"And if you further find and believe from the evidence that such violation, if any, directly and proximately caused, either in whole or in part, plaintiff's injuries and damages, if any he sustained, as referred to in the evidence, then your verdict will be in favor of the plaintiff and against the defendant in this case.

"On the other hand, if you should find and believe from the evidence that the separation of the cars, that is, the Pennsylvania car and the Rock Island car, was due to some other cause, that a failure to provide couplers coupling automatically on impact did not cause it, or that the separation of the cars, regardless of its cause, was not the proximate cause of plaintiff's injuries, then your verdict in this case should be for the defendant.

"Now, you will understand from what I have said to you that the plaintiff does not found his action and his claim upon negligence upon the part of the defendant; no negligence charged; the charge is a violation of an absolute statutory duty; and under the statute upon which the suit is based, and which I have referred to, if you find there was a breach of such duty, the defendant railroad can not defend the cars upon the ground that the plaintiff was also negligent, or that the accident was caused by negligence of some fellow servant of plaintiff, or that plaintiff assumed a risk of any operation engaged in; so the question of negligence upon the part of the plaintiff is not in this case. Any question of contributory negligence upon the part of the plaintiff is not in this case. Any question of negligence of a fellow servant is not in this case. Any question of the assumption of risk by the plaintiff is not in this case. Those matters you should not concern yourselves with in arriving at a verdict in this case.

"But similarly, plaintiff has no right to recover in this suit for any negligence of the defendant, if any has been shown; so you can not hold the defendant liable in this case for any act or failure to act of Tielker, who said he was a pin man in the engine crew (and as I recall, he testified to opening the coupling so it would couple on contact to, he said, with the car to which it was being shoved or kicked), or any other employee, or any defect or obstruction in the condition of the yards; that is not in this case.

"Now, I reiterate, the plaintiff charges the defendant with liability in this case based upon the violation of a federal statute, namely, a statute which requires and places the duty upon the defendant that it shall not haul or use cars that are not equipped with couplers that couple automatically on impact. The defendant denies the charge of the plaintiff in this respect.

\*    \*    \*    \*    \*    \*

"Now, the burden of proof rests upon the plaintiff to sustain the charge he has made in this case by a preponderance of the evidence; that is, by a greater weight of the evidence; that is, these two propositions: that either the Pennsylvania or the Rock Island car referred to in evidence were not equipped with couplers coupling automatically on impact as required by law, and that the plaintiff's injuries were directly and proximately caused by reason of such failure to equip said cars, or either of them, with the couplers coupling automatically on impact.

\*    \*    \*    \*    \*    \*

" * * * More specifically, although you may find that both or either of the cars referred to were not equipped with couplers coupling automatically on impact, as required by the mandate of the statute, plaintiff upon that showing alone can not recover in this case. The plaintiff must further show that the failure of the couplers to couple automatically upon impact was the proximate cause of his injury. There is liability in a case of this character only if the failure of the couplers to couple automatically not only create a condition under which, or an incidental situation in which the employee is injured, but it is necessary that be itself the immediate cause of the injury or the instrumentality through which the injury to plaintiff was directly brought about.

"Now, going to this question, which you must pass on: if you should find that the defendant did fail to have the cars mentioned in the evidence, that is, the Pennsylvania car or the Rock Island car, equipped with couplers which coupled automatically on impact, was such failure the proximate cause, in whole or in part, of the plaintiff's injuries?

"In determining this question of what was the proximate cause of the accident and plaintiff's injuries, * * * if you find * * * that the situation was created by failure of couplers to couple automatically on impact, then the failure of the couplers to couple automatically on impact, as required by the statute, could be considered by you as a proximate cause of plaintiff's injuries.

"On the other hand, if you find that plaintiff's action * * * was not the conduct of an ordinary prudent brakeman under the circumstances, * * * then you should find that his injury was the result of his own action, as a new and superseding cause, and that the operation of the cars due to failure of the couplers to couple automatically on impact was not the proximate cause of the accident and plaintiff's injuries."

■ Of course the charge must be considered in its entirety. "It is not difficult to destroy almost any charge by isolating certain limited expressions therein, but the charge must be considered as a whole with a view of determining the impression conveyed thereby to the jury." S. S. Kresge Co. v. McCallion, 8 Cir., 58 F.2d 931, 934.

■ We find no difficulty in reaching the conclusion that the charge made clear to the jury that defendant's liability depended upon its failure to equip its car or cars with couplers coupling automatically on impact. And the court properly instructed the jury that proof of the separation of the cars would support a finding that the Act had been violated. The difficulty arises from the rather strong inference created by the charge that all the jury need find to reach a verdict for plaintiff was that the cars did separate. We are unable to escape the conclusion that the instruction was not sufficiently clear and definite in that respect. It contained no explanation of the legal effect of this proof and the permissible use which the jury could make of it, i. e., that from it the jury could infer bad condition of the couplers and consequent violation of defendant's statutory duty and therefore could find this issue for plaintiff on that evidence if the inference arising therefrom was stronger than the proof and inference that the separation resulted from other causes. Where reliance for the proof of the ultimate fact rests entirely on circumstantial evidence it is ordinarily essential that the effect of the evidence and its proper use be explained. That is not only true in res ipsa cases but is especially true in cases such as this where only one circumstance is relied upon to support the inference. Plaintiff's counsel made the argument to the jury that:

"The plaintiff's duty is satisfied as long as you find that the couplers on this occasion when put in position to operate properly did not make or did not come together by impact. That is all there is to it, in so far as that particular phase of the case is concerned. I hope I make myself clear on that."

The instruction following that argument, that under the law the defendant had an absolute and continuing duty not to use any car which was not equipped with couplers coupling automatically on im-

pact and maintained in such operative condition that they *would always* perform their function and that plaintiff was not required to prove more than that "any coupler did in fact fail to couple automatically by impact", very probably gave the jury the impression that since that was all plaintiff need show, that was all the jury need find. If it did get that impression, consideration of other possible causes for the separation was eliminated because it was undisputed that the couplers did not couple these two cars.

■ The trial court was of the opinion, expressed in a memorandum opinion in ruling on the motion for a new trial, Affolder v. New York, C. & St. L. R. Co., D.C., 79 F.Supp. 365, 368, that the injunction given to the jury that it must find that the separation "was [due] to a failure on the part of the couplers of either car to *function properly* and to couple automatically on impact," taken with the further charge that if the jury found that the separation was due to some other cause and that "a failure to provide couplers coupling automatically on impact did not cause it," was sufficient to prevent any misunderstanding. We are unable to agree. The initial reaction from the entire charge is an impression that all that was necessary for the jury to find to reach the conclusion that there was a violation of the Act was that there was a separation. The bare intercalation of the words "to function properly" would not be likely to remove it. Nor do we think that telling the jury that their verdict should be for defendant if it found "a failure to provide couplers coupling automatically on impact did not cause [the separation]" did so. The couplers did not couple automatically on impact. That was a self-evident conceded fact. We are of the opinion that the jury could well have understood the charge taken as a whole to mean that since the couplers did not couple automatically on impact, since defendant had the absolute duty to furnish cars with couplers that did do so, the fact that these did not do so conclusively established defendant's violation of its duty to furnish cars with couplers that did.

■ Defendant's contention that its motion for a directed verdict should have been sustained because there is no evidence to support a finding that the failure of the couplers to couple on impact was the proximate cause of plaintiff's injury is without merit. One purpose of having efficient automatic couplers on trains is to hold the train together. These did not, and their failure to do so set in motion a chain of events without which there would have been no injury and because of which there was. The coming to rest of the Pennsylvania car and the subsequent movements affecting the group of cars did not break the continuity of the wrong. The separation of the cars resulted proximately from their failure to couple on the first impact. Plaintiff's act in undertaking to stop the cars was a natural one and an act that was neither rash nor foolhardy. The continuity of the cause was not broken by the plaintiff's exercise of his own violation in going from a point of safety in the exercise of his duty. "It has long been settled that the chain of causation is not broken by an intervening act which is a normal reaction to the stimulus of a situation created by negligence. * * * To determine whether there was a continuous succession of events leading proximately from fault to injury, the test is not whether the plaintiff was acting in performance of his duty when injured, but whether his act was a normal response to the stimulus of a dangerous situation created by the fault." New York Cent. R. Co. v. Brown, 6 Cir., 63 F.2d 657, loc.cit. 658. See also Davis v. Wolfe, 263 U.S. 239, 44 S.Ct. 64, 68 L.Ed. 284; McAllister v. St. Louis Merchants' Bridge Terminal R. Co., 324 Mo. 1005, 25 S.W.2d 791; Anderson v. Baltimore & O. R. Co., 2 Cir., 89 F.2d 629; Cusson v. Canadian Pac. R. Co., 2 Cir., 115 F.2d 430; Erie R. Co. v. Caldwell, 6 Cir., 264 F. 947; Louisville & Nashville R. Co. v. Layton, 243 U.S. 617, 37 S.Ct. 456, 61 L.Ed. 931; Minneapolis & St. Louis R. Co. v. Gotschall, 244 U.S. 66, 37 S.Ct. 598, 61 L.Ed. 995. The rule applied in St. Louis & San Francisco R. Co. v. Conarty, 238 U.S. 243, 35 S.Ct. 785, 59 L.Ed. 1290; Lang

v. New York Central R. Co., 255 U.S. 455, 41 S.Ct. 381, 65 L.Ed. 729; Reetz v. Chicago & E. R. Co., 6 Cir., 46 F.2d 50; Bobango v. Erie R. Co., 6 Cir., 57 F.2d 667; and Carter v. Atlanta & St. A. B. Ry. Co., 5 Cir., 170 F.2d 719, that where a violation of the Safety Appliance Act is not a proximate cause of the injury but merely creates an incidental condition or situation in which the accident otherwise caused results in the injury there can be no recovery, is not applicable to the facts of this case.

The assignment of error that the verdict is excessive is not properly addressed to this court. Public Utilities Corporation of Arkansas v. McNaughton, 8 Cir., 39 F.2d 7; Sun Oil Co. v. Rhodes, 8 Cir., 15 F.2d 790; City of Lincoln v. Power, 151 U.S. 436, 14 S.Ct. 387, 38 L.Ed. 224; New York, L. E. & W. R. Co. v. Winter, Adm'r, 143 U.S. 60, 12 S.Ct. 356, 36 L.Ed. 71; Kurn v. Stanfield, 8 Cir., 111 F.2d 469; Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 92 A.L.R. 1166.

Because of the error in the charge heretofore noted, the judgment is set aside and the cause is remanded for a new trial.

RIDDICK, Circuit Judge, concurs in the result.