ON APPLICATION FOR REHEARING
Our opinion of August 31, 1990, is withdrawn, and the following opinion is substituted therefor:
This is an appeal from a judgment rendered on a jury verdict in favor of the defendant, CSX Transportation, Inc. ("CSX"), and against the plaintiff, Raymond Orchelle, in an action brought under the Federal Employer's Liability Act, 45 U.S.C. § 51
et seq. (1982) ("the FELA"), following an accident at Orchelle's workplace. Orchelle's complaint alleged in part that his injury was caused by a violation of the Safety Appliance Act, 45 U.S.C. § 1 et seq. (1982) ("the SAA"). The SAA imposes on railroads an absolute duty to comply with its provisions and makes issues of negligence and due care irrelevant. O'Donnell v. Elgin, J. E. Ry.,338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949). The trial court refused to instruct the jury on the SAA, and Orchelle argues that the court's refusal was reversible error. CSX responds with the argument that Orchelle did not preserve the alleged error for review and, alternatively, that even if he did, the court's refusal to instruct the jury on the SAA was correct.
Orchelle worked as a switchman for CSX in Cincinnati, Ohio. One of his duties was to "lace" or couple air hoses for air brakes between rail cars when those cars were being prepared for transfer from one area of the railyard to another. In 1985 Orchelle injured his right wrist while attempting to connect two hoses on rail cars that were at a standstill in CSX's Queensgate railyard. According to Orchelle, the couplings of those hoses were "burred" or damaged and he injured his wrist while attempting to force them together. Following that injury Orchelle filed a claim pursuant to the FELA, alleging that CSX had violated the SAA by failing to maintain the hoses properly.
During the trial, the court held several discussions with the parties' attorneys about whether certain provisions of the SAA applied to the facts of Orchelle's alleged injury. Sections one and nine of the SAA require that trains have power brakes; Orchelle took the position that those provisions, together with a regulation promulgated pursuant thereto,49 C.F.R. § 232.17(b)(1), included a requirement that the hoses be maintained in a safe condition so that railroad workers could safely connect them. At the close of plaintiff's evidence, the parties held a long discussion that included the following remarks by the trial court:
 "The objective of the Act is to ensure that trains stop effectively and in a way secondarily to keep trainmen from having to go between the cars to operate the hand brakes. *Page 751 
 "Now, in this case in the first instance, we have no claim that they didn't connect, that the brakes didn't work efficiently. We have no evidence of that whatsoever. I think there is a serious question as to whether it applies to this type injury. . . .
 ". . . But it wasn't any fault of the brake system. It may have been a burr. And I have no doubt that you have certainly put on evidence that would authorize the jury to find that there was a defect due to the negligence of the railroad in letting it be in this condition. So, I think on that score, there is a directed verdict on that aspect [the SAA] that is probably due to be granted.
". . . .
 ". . . I think that I'm going to have to put it to them just on the FELA. . . .
". . . .
 "At this point, . . . it would be my holding that the Safety Appliance Act would not be charged or applicable to this case.
"MR. BURGE: We except. . . .
". . . .
 "THE COURT: . . . I think the objective of the particular statute that we're talking about and the particular rule that we're talking about would not apply to this type action on the part of Mr. Orchelle. Further, even if it did, there's not sufficient evidence to submit that to the jury. It's at that second and third level that I'm ruling. The initial level of the application [of the SAA to the particular movement of trains involved] you win on."
The trial resumed and CSX put on one witness, who testified briefly, after which the following occurred:
 "THE COURT: Does anybody know of a single case where a trainman has been injured in and about [an] air coupling in which he has been allowed to recover under the Safety Appliance Act?
"MR. BURGE: Well, Judge, it's so akin —
 "THE COURT: I understand your argument. I was just asking if anybody knew of a single case where — it's distinguishable. All right. What I'm going to charge now is straight FELA."
After the judge charged the jury, without charging on the SAA, he asked if there were any objections, and Orchelle's attorney answered, "No, Your Honor." CSX argues that Orchelle's failure to object after the jury charge waived any claim of error regarding the court's refusal to instruct the jury on the SAA. CSX cites Rule 51, Ala.R.Civ.P., which provides in part:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
In another case involving the same procedural question, this Court held that the plaintiff had preserved his claim of error concerning the giving of a jury instruction by stating his objection to the charge during the pre-charge conference, notwithstanding his statement, after the charge to the jury, that he did not have any exceptions to the charge. Gray v.Mobile Greyhound Park, Ltd., 370 So.2d 1384, 1387 (Ala. 1979). In that case, Gray's earlier objection gave the trial court sufficient notice of its alleged error, thereby satisfying the requirements of Rule 51. Id.
Orchelle repeatedly tried to persuade the trial judge that the SAA applied, and he objected to the judge's refusal to charge on that Act. Those efforts made his position abundantly clear to the trial court. To hold that the issue is not preserved for review because Orchelle's attorney did not renew his objection after the court instructed the jury would be an excess of formality.
CSX also argues that the issue was not preserved for appellate review because Orchelle did not file a written requested jury instruction on the applicability of the SAA. CSX directs this Court's attention to two recent cases, Exparte Jordan, 532 So.2d 1252 (Ala. 1988); and Matkinsv. State, 497 So.2d 201 (Ala. 1986), as support for its contention. Without again attempting *Page 752 
to clarify when a written jury instruction is required to preserve an issue for appellate review, we hold that the issue is preserved in this case because of the extensive discussions of the issue during the trial, because the request was to give an instruction in statutory form, and because the trial court made it clear that it would not instruct the jury on the SAA claim, well before it came time to submit written jury instructions.
Indeed, the court stated in a belated post-trial order that it had ruled on the merits of Orchelle's SAA claim. The court recited that the post-trial motion had been denied by operation of law because it had been pending longer than 90 days, see Rule 59.1, Ala.R.Civ.P., and continued:
 "Although, for the reasons above stated, this order is not a ruling on Motion for New Trial, it is the finding of this court that a request to charge 49 C.F.R. § 232.17(b)(1), was properly presented at trial, the question presented being whether to charge that C.F.R. section in its statutory language or not to charge it at all. The plaintiff properly presented the statute itself to the court, along with his arguments in favor of charging that statute. In FELA cases the practice of this court is to charge safety appliance acts or other statutes according to statutory terms. This procedure is known to counsel, and when such statutes are presented and fully argued and urged, as was the case here, and the court is satisfied the requested charge is amply known to all sides, no further written charges are requested or required. Such was the case here. The decision not to charge was made on the merits of that request, as explained in open court."
(Emphasis added.) This order shows that Orchelle followed the court's ordinary procedure on FELA cases and did all that was necessary to comply with the spirit of Rule 51. Therefore, we conclude that the issue of whether the trial court erred by refusing to instruct on the SAA is properly before this Court.
 Applicability of the SAA
Orchelle's SAA claim was based on 45 U.S.C. § 1 and 9, and 49 C.F.R. § 232.17(b)(1), a regulation promulgated pursuant to the SAA.[1] The purpose of the SAA is to promote the safe movement of trains over mainline tracks by requiring the installation of brakes that will effectively control the movement of those trains. United States v. Seaboard AirLine R.R., 361 U.S. 78, 80 S.Ct. 12, 4 L.Ed.2d 25 (1959);United States v. Chicago, B. Q. R.R., 237 U.S. 410,35 S.Ct. 634, 59 L.Ed. 1023 (1915); Grogg v. MissouriPacific R.R., 841 F.2d 210 (8th Cir. 1988); Erskine v.Consolidated Rail Corp., 814 F.2d 266 (6th Cir. 1987). To achieve that purpose, the provisions of the SAA require railroads to install air brakes on their trains; they also regulate the inspection, maintenance, and repair of those brakes. 45 U.S.C. § 1-16.
The United States Supreme Court has held that the SAA should be liberally construed to allow railroad employees to recover if their injury is caused or contributed to by defective or insufficient braking equipment. Coray v. Southern PacificCo., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949);Davis v. Wolfe, 263 U.S. 239, 44 S.Ct. 64,68 L.Ed. 284 (1923). Issues of negligence, contributory negligence, and due care are irrelevant in SAA cases, O'Donnell v. Elgin,J. E. Ry., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187
(1949), and an employee is not precluded from recovery simply because his injury was not one that the SAA sought to prevent.Minneapolis St. L. R.R. v. Gotschall, 244 U.S. 66,37 S.Ct. 598, 61 L.Ed. 995 (1917); see also Kernan v.American Dredging Co., 355 U.S. 426, 78 S.Ct. 394,2 L.Ed.2d 382 (1958) (discussing the scope of liability under the SAA, the Jones Act, and the Boiler Inspection Act).
In Louisville N. R.R. v. Layton, 243 U.S. 617,37 S.Ct. 456, 61 L.Ed. 931 (1917), *Page 753 
the Court affirmed a judgment for an injured railroad employee. That employee had been on one of five freight cars loaded with coal. An engine pushed a stock car into the last of the freight cars and drove them into a standing train. Neither the stock car nor the freight car that it struck was equipped with automatic couplers, as required by the SAA. The stated purpose of the automatic coupler requirement was to avoid "the necessity of men going between the ends of cars." The railroad argued that this stated purpose showed that Congress intended the requirement only for the benefit of employees who were injured while coupling or uncoupling cars. The Court rejected the railroad's argument, holding that liability was not restricted to SAA violations that interfered with the accomplishment of the SAA's stated purpose:
 "The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the [SAA] springs from its being made unlawful to use cars not equipped as required, — not from the position the employee may be in or the work which he may be doing at the moment when he is injured. . . . [C]arriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty."
243 U.S. at 621, 37 S.Ct. at 457.
In addition, in Davis v. Wolfe, supra, the Court held that a railroad employee should be allowed to recover "if the failure to comply with the requirements of the [SAA] is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection." 263 U.S. at 243,44 S.Ct. at 66.
In a case that is closely analogous to the instant case, a brakeman was injured while trying to release a tightly set hand brake. In his attempt to force the brake, the brakeman put his left foot on a running board and his right foot on a grab iron (a required safety appliance) to better position himself for putting pressure on the brake. His weight caused the plank to which the grab iron was bolted to split, and he lost his balance, fell, and was injured. The railroad argued that the grab iron's purpose was to give employees an appliance to grasp with their hands, not to provide a foot brace. The Court rejected that argument, holding that the SAA should be "liberally construed so as to give a right of recovery for every injury the proximate cause of which was a failure to comply with a requirement of the Act." Swinson v. Chicago,St. P., M. O. Ry., 294 U.S. 529, 531, 55 S.Ct. 517, 517,79 L.Ed. 1041 (1935).
Orchelle presented evidence that tended to show that CSX had allowed the air hose he was attempting to couple to drag along the track, thus causing the threads of the coupler to become "burred." He says that, as a result of the burring, he was unable to connect the hoses, and that his attempt to force the ends of the hoses together caused his wrist injury. He argues that CSX violated 49 C.F.R. § 232.17(b)(1) by allowing the threads of the hose coupler to become "burred." That regulation reads in part:
 "Brake equipment on cars other than passenger cars must be cleaned, repaired, lubricated, and tested as often as required to maintain it in a safe and suitable condition for service."
In view of the construction that has been placed on the SAA by the United States Supreme Court and other federal courts, it is clear that Orchelle presented sufficient evidence of a violation to warrant a jury charge on that Act. Therefore, the trial court erred by refusing to give that charge; its judgment is reversed, and this cause is remanded for a new trial.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] The incorporation of applicable federal regulations into the FELA, the Jones Act, and the SAA, and their use as a basis of liability, have been approved by the Supreme Court.Kernan v. American Dredging Co., 355 U.S. 426,78 S.Ct. 394, 2 L.Ed.2d 382 (1958). *Page 754