Daniel Lyles appeals from a summary judgment entered in favor of the defendant, the Alabama State Docks Terminal Railway ("Railway").
A summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. Once the moving party has made a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmoving party to produce substantial evidence supporting its position and creating a genuine issue of material fact. §12-21-12, Ala. Code 1975. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant.
On February 28, 1996, Lyles was injured while working as a switchman for the Railway. At the time of the accident, Lyles was working on a crew that included him, the conductor, and the engineer. The crew was operating a train with 105 empty boxcars, and they were moving it to a storage track so that a "bad" boxcar, located in the middle of the train, could be removed and placed on a different track.
Lyles was riding on a boxcar at the end of the train. His job was to notify the other crewmembers by radio to let them know when the train was near the end of the storage track. Lyles's radio was not working properly, so the yardmaster was relaying Lyles's information to the engineer at the front of the train, which was over a mile away. The train was traveling between five and eight miles per hour. The train suddenly stopped and Lyles was thrown against a ladder and then was thrown off the train. Hitting the ladder caused an injury to his chest, and being thrown off the train caused an injury to his back. The fall rendered him briefly unconscious. When he regained consciousness, he told the yardmaster, by radio, that he had been injured. The yardmaster took Lyles to an infirmary, where he was treated for a contusion of the chest wall. Lyles also suffered pain in his lower back from the accident.
Lyles sued the Railway under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51. He claimed that the sudden stop had been due to negligent maintenance of the braking system or negligence on the part of the engineer. Lyles also claimed that this negligence violated the Safety Appliance Act ("SAA"), §45 U.S.C. § 1. Additionally, Lyles argued that at the time of the accident his radio was not working properly and that the faulty radio had contributed to cause his injuries.
Congress enacted FELA in 1906 to establish "a tort remedy for railroad workers injured on the job." Lancaster v. Norfolk 
Western Ry., 773 F.2d 807, 812 (7th Cir. 1985), cert. denied,480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987). It was enacted in response to the special needs of railroad workers, Sinkler v. Missouri Pacific R.R., 356 U.S. 326, 329, 78 S.Ct. 758, 761-62,2 L.Ed.2d 799 (1958), and it is liberally construed for their protection.
In a FELA action the question of what constitutes negligence is governed by federal law and it does not vary according to variations in state law. Urie v. Thompson, 337 U.S. 163,69 S.Ct. 1018, 93 L.Ed. 1282 (1949). To prevail in a FELA action, the plaintiff must prove the traditional common-law elements of negligence: duty, breach of duty, foreseeability, and causation. Adams v. CSX Transp., Inc., 899 F.2d 536 (6th Cir. 1990). *Page 125 
 "The purpose of the SAA is to promote the safe movement of trains over mainline tracks by requiring the installation of brakes that will effectively control the movement of those trains. United States v. Seaboard Air Line R.R., 361 U.S. 78, 80 S.Ct. 12, 4 L.Ed.2d 25
(1959); United States v. Chicago, B. Q. R.R., 237 U.S. 410, 35 S.Ct. 634, 59 L.Ed. 1023 (1915); Grogg v. Missouri Pacific R.R., 841 F.2d 210 (8th Cir. 1988); Erskine v. Consolidated Rail Corp., 814 F.2d 266 (6th Cir. 1987). To achieve that purpose, the provisions of the SAA require railroads to install air brakes on their trains; they also regulate the inspection, maintenance, and repair of those brakes. 45 U.S.C. § 1-16.
 "The United States Supreme Court has held that the SAA should be liberally construed to allow railroad employees to recover if their injury is caused or contributed to by defective or insufficient braking equipment. Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949); Davis v. Wolfe, 263 U.S. 239, 44 S.Ct. 64, 93 L.Ed. 284
(1923). Issues of negligence, contributory negligence, and due care are irrelevant in SAA cases, O'Donnell v. Elgin, J. E. Ry., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949), and an employee is not precluded from recovery simply because his injury was not one that the SAA sought to prevent."
Orchelle v. CSX Transp., Inc., 574 So.2d 749, 753 (Ala. 1990).
Lyles presented evidence indicating that when the engineer was applying the brakes, the train went into "emergency" and stopped suddenly. (C.R. 121.) The engineer was told to slow the train, but was not told to stop it or to place it in "emergency." (C.R. 99.) The train has a brake lever that the engineer uses to slow the train; if it is pushed all the way down, the train's brakes go into "emergency" and stop the train abruptly. (C.R. 121.) A train is not supposed to stop suddenly or go into "emergency" unless the engineer is told to place the lever into the emergency position. (C.R. 101.) When a train goes into "emergency," the engineer no longer has control over the train. ( C.R. 120.) The conductor, who was also a train engineer, stated that a train's brakes can also go into "emergency" if there is an obstacle or "trash" in the air brake line. (C.R. 105-07.) The conductor stated that he has known of trains going into "emergency" only a few times in the 16 years he has worked on railroads. (C. R. 106.) One could reasonably infer, based on the evidence presented, either that the engineer pushed the brake lever into "emergency" or that a defect in the brake line caused the train to go into "emergency."
Viewing the facts most favorably to Lyles, as we are required to view them, we conclude that the factfinder could determine that the engineer negligently placed the air brake lever into the "emergency" position and thereby caused the train to go into "emergency" — a situation that would create liability under the FELA — or could determine that a defect, i.e., "trash," in the air brake line allowed all the air to be released and thereby caused the train to go into "emergency" — a situation that would create liability under the SAA.
Accordingly, the trial court erred in entering the summary judgment. That judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
Almon, Shores, and Cook, JJ., concur.
Houston, See, and Lyons, JJ., concur in the result.
Hooper, C.J., and Maddox, J., dissent.